May 5, 2017

**Supreme Court**

No. 2016-150-Appeal.
(PC 11-1620)

1112 Charles, L.P.                    :

            v.                         :

Fornel Entertainment, Inc., et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

1112 Charles, L.P.　　　　　　　：

v.　　　　　　　　：

Fornel Entertainment, Inc., et al.　　：

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The plaintiff, 1112 Charles, L.P. (1112 Charles or plaintiff), appeals the grant of summary judgment in favor of Fornel Entertainment, Inc. and Anthony Lancellotta (Fornel, Lancellotta, or defendants).  This case came before the Supreme Court on March 30, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After hearing counsels' arguments and reviewing the parties' memoranda, we are satisfied that cause has not been shown.  Accordingly, we shall decide this appeal at this time without further briefing or argument.  For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

This case concerns a lease dispute between 1112 Charles, a Rhode Island limited partnership that owns property at 1112 Charles Street, North Providence, Rhode Island, and Fornel, a Rhode Island corporation doing business under the name Lancellotta's Banquet Restaurant, located across the street at 1113 Charles Street, North Providence.  On December 30, 1999, Fornel, through its president Lancellotta, entered into a lease agreement (original lease) with Joseph Simone, the then-owner of the property and a bakery located at 1112 Charles Street.

Simone, lessor, agreed to lease a portion of his property to Fornel "for use solely by Lessee as a parking lot." The original lease stated that its term was to run from January 1, 2000, through "December 31, 2114." Under the original lease's terms, Fornel agreed to keep the premises in good condition, pay the cost of repaving and improving the parking lot, and pay $1.00 per month for the term of the lease.[1]

In September 2002, Simone entered into an agreement with Karam Properties, LLC (Karam) to sell the property. Prior to the sale, however, errors in the original lease were discovered wherein the building on the property was included in the lease agreement and the lease term erroneously stated that it expired on December 31, 2114. On September 24, 2002, Simone, Lancellotta, and Karam executed an amended lease to clarify that the lease term expired on December 31, 2014, not 2114, and to exclude the building located on the premises from the original lease.

Karam subsequently fell into receivership. In September 2005, the receiver agreed to sell the property to Eltahan Properties, LLC (Eltahan). Prior to closing, however, Sovereign Bank, Eltahan's lender, expressed concern with the original lease and, among other things, questioned whether it provided Eltahan with the right to park any cars on the property. To address these concerns, on September 29, 2005, Eltahan and Fornel entered into a "Second Lease Extension and Modification Agreement" (second lease extension), which extended the lease for another ten years, through December 31, 2024. It also clarified that the lessor could use five parking spots in

---

[1] The parties state that Fornel agreed to pay 100 percent of the cost of repaving the lot and demolishing a shed on the property at 1112 Charles Street, and Simone agreed to reimburse Fornel for 50 percent of the cost of the demolition and repaving. This agreement is not contained in the original lease, but appears within a promissory note wherein Simone promised to pay Fornel $9,125.

front of the bakery between the hours of 7 a.m. to 7 p.m.[2] The second lease extension added the following provision (release provision) to the original lease: "Lessor and Lessee acknowledge the validity of the Lease and Amended Lease * * * . Lessor and Lessee have no defenses, setoffs, or counterclaims against the other in connection with the Lease and Amended Lease."

Further, as a part of the financing agreement with Sovereign Bank, Eltahan and Fornel entered into a "Non-Disturbance, Attornment and Subordination Agreement and Tenant's Estoppel" (attornment agreement). Pursuant to the attornment agreement's subordination clause, Fornel subordinated its right as lessee under the original lease "to the right, title and interest of [the] Lender under the Security Deed * * * ." The nondisturbance clause safeguarded the lessee by providing that the lease would not be terminated as long as Fornel had not defaulted on any payments, continued to perform its obligations under the lease, and "attorn[ed]" as set forth in the attornment clause. Under the attornment clause, if the lessor's interests under the lease were transferred, Fornel, as lessee, was bound to the purchaser under the lease for the balance of its term, "with the same force and effect as if the Purchaser or Lender were the lessor under the Lease, and Tenant, as lessee under the Lease * * * ."[3]

---

[2] Specifically, it stated:

> "Lessee agrees to allow Lessor the use of five (5) parking spaces immediately in front of Lessor's bakery business (currently marked as such) during the hours of 7 a.m. to 7 p.m. and to use its best efforts to insure that its agents, employees and invitees shall not interfere with Lessor's right to use the five (5) front spaces for its patrons and invitees for Lessor. Lessor agrees to use its best effort to insure that its agents, employees and invitees shall not interfere with Lessee's right to use the remaining parking spaces solely for Lessees agents, employees, patrons and invitees."

[3] The attornment clause provides:

> "Unless the Lease is terminated * * * if the interests of the lessor under the Lease shall be transferred * * * the lessee thereunder shall be bound to the Purchaser or Lender, as the case may be, under all of the terms, covenants and conditions of the

After Eltahan defaulted, the property was again sold at auction on October 6, 2010 to Bennie Sisto. According to defendants, Sisto knew about the lease agreement prior to the auction because the receiver and Lancellotta had announced it at the auction. Additionally, Sisto signed the "Terms of Sale" agreement, which stated that the property was "sold subject to prior mortgages and other encumbrances of record, if any, including that certain Lease dated December 30, 1999 * * * ." After the purchase, Sisto then assigned his property interest to 1112 Charles.

On March 24, 2011, 1112 Charles filed a four-count complaint against defendants, alleging fraud and misrepresentation (count 1), a breach of the implied duty of good faith and fair dealing (count 2), and seeking a declaratory judgment (count 3), and the quieting of title in the plaintiff (count 4). With respect to the declaratory-judgment count, plaintiff sought declarations: (1) as to the parties' rights, duties, and obligations; and (2) that the original lease was void ab initio.

On October 22, 2012, plaintiff moved for partial summary judgment on its declaratory-judgment count pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. In support of its motion, plaintiff argued that the original lease did "not reflect the agreement of the parties to the Original Lease on three material points, to wit:" (1) the original lease term was intended to end on December 31, 2014, not December 31, 2114, as the original lease stated; (2) the term "premises" as used within the original lease was not intended to include the building on the

> Lease for the balance of the term thereof * * * with the same force and effect as if the Purchaser or Lender were the lessor under the Lease, and Tenant, as lessee under the Lease, does hereby attorn to the Purchaser and Lender if it takes title to or possession of the Property, as its lessor under the Lease."

property, although the original lease included buildings and improvements in defining the term; and (3) Fornel's rights under the original lease were not intended to be exclusive.

On January 11, 2013, defendants objected to the motion for partial summary judgment and filed a cross-motion for summary judgment. In support of its motion—and in objection to plaintiff's—defendants argued that plaintiff lacked standing to contest the original lease or any subsequent amendments thereto because plaintiff was not a party to the original lease or any of its amendments. Neither Sisto nor Stefania Mardo, plaintiff's manager and Sisto's daughter who attested to the allegations in the complaint, participated in the execution of the original lease or any of its amendments. Additionally, defendants maintained that Sisto knew about the parking lot lease prior to purchasing the property and his "buyer's remorse and regrets" did not give him standing to challenge the original lease.

The defendants also challenged plaintiff's complaint because Mardo attested to the allegations set forth in it; defendants, however, maintained that she lacked personal knowledge as to what she attested. Thus, defendants averred that the allegations undergirding the complaint were unsupported. The defendants also contended that plaintiff's complaint lacked particularized facts that supported its allegation of fraudulent conduct by defendant, as required under Rule 9(b) of the Superior Court Rules of Civil Procedure. See id. ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Lastly, defendants argued that plaintiff's count alleging a breach of the implied duty of good faith and fair dealing was not an independent tort—it only gave rise to a breach-of-contract claim.

The plaintiff objected to defendants' summary judgment motion. It conceded that it was not involved in the execution of the original lease or any subsequent amendments, but it asserted

- 5 -

that it nonetheless had standing because, as the property owner, it was the assignee of the rights and obligations under the original lease. The plaintiff also challenged defendants' argument that its complaint was not based on personal knowledge; it maintained that the averments in its complaint were based on the sworn testimony of Simone and Eltahan. The plaintiff disagreed with defendants' contention that its fraud allegations failed to comply with Rule 9(b)'s heightened pleading requirement, and maintained that its "fraud allegations could not be more specific." With respect to the argument that the breach of the implied duty of good faith and fair dealing was not an independent tort, plaintiff argued that it asserted this claim as a contract claim, not as a separate tort.

On March 11, 2013, a justice of the Superior Court granted plaintiff's motion for partial summary judgment with respect to the three declarations sought: that the original lease term expired on December 31, 2014, not December 31, 2114; that the term "premises" as used within the original lease was not intended to include the building on the property; and that Fornel's right to use the premises was nonexclusive. That day, the same justice also denied defendants' summary judgment motion without prejudice.

On June 23, 2014, defendants again moved for summary judgment. The defendants raised arguments similar to those in their prior motion. This motion came before another justice of the Superior Court on September 9, 2014. By an order dated October 7, 2014, the justice denied defendants' motion without prejudice.[4]

The case proceeded to trial. The plaintiff maintains that "[o]n the eve of trial," a third justice of the Superior Court "reconsidered" and ultimately granted defendants' motion for

---

[4] At oral argument, the parties stated that this motion for summary judgment was denied based on the law-of-the-case doctrine.

- 6 -

summary judgment.[5]  As plaintiff did not order transcripts of that hearing—or any lower court proceeding for that matter—we must rely on the parties' accounts of the justice's decision.[6] According to the parties, the justice noted that, when property is conveyed subject to a lease, such as here, the lessee and grantee of the property are in privity of estate, not privity of contract. Having determined that plaintiff and defendants were not in privity of contract, the justice held that plaintiff lacked standing to pursue the claims in its complaint.  The plaintiff quotes the justice as saying:

> "1112 Charles, LP is a third-party beneficiary of some of the provisions of the Non-Disturbance, Attornment and Subordination Agreement and Tenant's Estoppel.  However, that status only permits it to enforce the benefits that inure to it under the lease.  It does not create privity of contract such that 1112 Charles, LP can elect to avoid the underlying lease itself."

The defendants state that plaintiff solely challenged the second lease extension at the hearing, and plaintiff argued that it had privity of contract to challenge it because of the attornment agreement, an argument that defendants characterized as "never before raised by [plaintiff] and for which [plaintiff] provided no supporting law."  The justice granted defendants' motion for summary judgment because plaintiff was not in privity of contract with defendants and lacked standing to assert the allegations raised in its complaint.  On April 6, 2016, the justice entered final judgment for the defendants.

---

[5] Although defendants did not refile their motion for summary judgment, plaintiff did not challenge its utilization by the justice.  This Court notes that, generally, once a case has reached trial, it is not appropriate to entertain a motion for summary judgment.  See Haxton's of Riverside, Inc. v. Windmill Realty, Inc., 488 A.2d 723, 724 n.1 (R.I. 1985) ("A motion for summary judgment is * * * inappropriate after trial has commenced."); Gallo v. National Nursing Homes, Inc., 106 R.I. 485, 487, 261 A.2d 19, 21 (1970) ("[S]ummary judgment is an extreme remedy which should not be used as a substitute for a trial * * * .").

[6] As this Court recently reiterated, "[t]he decision to pursue an appeal without ordering the full transcript of the Superior Court proceeding is 'risky business.'" Bellevue-Ochre Point Neighborhood Association v. Preservation Society of Newport County, 151 A.3d 1223, 1229 n.8 (R.I. 2017) (quoting Holden v. Salvadore, 964 A.2d 508, 513 (R.I. 2009)).

On April 25, 2016, plaintiff appealed to this Court. On appeal, it argues that the justice erred in ruling that the attornment agreement did not create privity of contract between plaintiff and defendants and therefore finding that plaintiff lacked standing to bring its suit challenging the second lease extension.[7] The plaintiff also contends that the justice erred by not incorporating the partial summary judgment and the additional declaration into the final judgment.

## II

### Standard of Review

"We review a hearing justice's grant of summary judgment <u>de novo</u>." <u>Tri-Town Construction Co. v. Commerce Park Associates 12, LLC</u>, 139 A.3d 467, 474 (R.I. 2016). "We will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." <u>High Steel Structures, Inc. v. Cardi Corp.</u>, 152 A.3d 429, 433 (R.I. 2017) (quoting <u>Boucher v. Sweet</u>, 147 A.3d 71, 73 (R.I. 2016)). "The nonmoving party bears the burden of showing the existence of disputed issues of material fact by competent evidence; it cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." <u>Id.</u> (quoting <u>Boucher</u>, 147 A.3d at 73).

---

[7] Although plaintiff was unclear about whether it was challenging the original lease or the second lease extension, at oral argument, it clarified that it was solely challenging the second lease extension.

# III

## Discussion

### A

### Standing

"Standing is a threshold inquiry into whether the party seeking relief is entitled to bring suit." Genao v. Litton Loan Servicing, L.P., 108 A.3d 1017, 1021 (R.I. 2015) (quoting Narragansett Indian Tribe v. State, 81 A.3d 1106, 1110 (R.I. 2014)). At its core, inquiries into standing consider "whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues * * * ." Id. (quoting Narragansett Indian Tribe, 81 A.3d at 1110). In so determining, "the focal point shifts to the claimant, not the claim, and a court must determine if the plaintiff 'whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable' * * * ." Cruz v. Mortgage Electronic Registration Systems, Inc., 108 A.3d 992, 996 (R.I. 2015) (quoting Narragansett Indian Tribe, 81 A.3d at 1110). The party asserting standing must have an injury in fact that is "(a) concrete and particularized * * * and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (quoting Pontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997)).

In addition to these requirements, we generally confine standing "to those plaintiffs asserting their own rights, not the rights of others." Mruk v. Mortgage Electronic Registration Systems, Inc., 82 A.3d 527, 535 (R.I. 2013). As such, in the context of contracts, this Court has long held "that third parties to a contract lack standing to challenge its validity." Id. In Mruk, this Court made an exception to this general principle and held that "homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent

necessary to contest the foreclosing entity's authority to foreclose." Id. at 536. This exception is inapplicable here, however, as it "is confined to private residential mortgagors challenging the foreclosure of their homes." Id. Therefore, based on the foregoing principles, a party must be in privity of contract with the other party to have standing to challenge the contract's validity.[8]

It is plainly apparent that plaintiff is not in privity of contract with defendants because it was not a party to the second lease extension, and therefore plaintiff lacks standing to challenge it. Although plaintiff concedes that it is not in privity of contract with defendants in the traditional sense, it maintains that the attornment agreement created the requisite privity of contract. We disagree.

An attornment agreement is defined as "[a] tenant's agreement to hold the land as the tenant of a new landlord." Black's Law Dictionary 155 (10th ed. 2014). The purpose of an attornment agreement, such as the one present in this case, is to ensure that the lessee remains bound under the lease to a new lessor who purchases the property. There is no language in the attornment agreement here that indicates that it grants plaintiff privity of contract. Nor is there legal support for plaintiff's proposition that the attornment agreement creates privity of contract. As such, we agree with the justice that the attornment agreement did not create privity of contract between plaintiff and defendants, and therefore plaintiff lacked standing to challenge the second lease extension.

Nevertheless, even if plaintiff had standing to challenge the second lease extension, it is barred from doing so under the release provision, which states that "Lessor and Lessee have no defenses, setoffs, or counterclaims against the other in connection with the Lease and Amended

---

[8] Privity of contract is defined as "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." Black's Law Dictionary 1394 (10th ed. 2014).

Lease." This provision makes it very apparent that plaintiff would not be able to assert the claims raised in its complaint.

Having concluded that the plaintiff is not in privity of contract either through the lease agreement or the attornment agreement and cannot challenge the validity of the original lease or any of its subsequent amendments, it is not necessary to address the plaintiff's remaining arguments.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | 1112 Charles, L.P. v. Fornel Entertainment, Inc., et al. |
| **Case Number** | No. 2016-150-Appeal.<br>(PC 11-1620) |
| **Date Opinion Filed** | May 5, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Patricia A. Hurst |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Robert D. Wieck, Esq.<br>Richard L. Gemma, Esq. |
| | For Defendants:<br><br>Carl Levin, Esq. |