June 27, 2017

**Supreme Court**

No. 2015-4-Appeal.
No. 2015-110-Appeal.
(PC 12-4449)

Stephen L. Key et al.                    :

              v.                         :

Brown University et al.                  :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2015-4-Appeal.
No. 2015-110-Appeal.
(PC 12-4449)

Stephen L. Key et al.          :

v.          :

Brown University et al.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The plaintiffs, Stephen L. Key, as Trustee of the Stephen L. Key Trust – 2008 (the trust), and individually (Key), and Melanie D. Mitchell (collectively, plaintiffs), appeal from a judgment entered in Superior Court in favor of the defendants, Brown University (Brown or Brown University) and the City of Providence (the city). The first count of the plaintiffs' verified second-amended complaint, which is the sole issue on appeal, sought a declaration that Brown University's construction of an artificial-turf field hockey field with attendant bleachers, press box, electronic scoreboard, and public-address system was an unlawful use under the Providence zoning ordinances. Ruling that the plaintiffs lacked standing to seek such a declaration, a Superior Court justice granted the defendants' motions for summary judgment as to count 1 and entered judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. For the reasons explained herein, we vacate the judgment of the Superior Court.

**Facts and Travel**

Although the issue before us is narrow (<u>viz.</u>, whether plaintiffs have standing to pursue a claim for declaratory relief), we find it useful to set forth the nature of the controversy in some detail. This case arises from Brown University's project to undertake various renovations to the Wendell R. Erickson Athletic Complex (the complex) in Providence. The complex is located at the corner of Hope Street and Lloyd Avenue in the city's East Side. Brown University purchased the complex in 1957 and has utilized it for the purpose of athletics for more than fifty years. The plaintiffs Key and Mitchell are husband and wife and reside in a 19th century Victorian house owned by the trust (the property). The property is located in the Stimson Avenue Historic District and abuts the field hockey field. At the time Key moved into the property in 1995, the complex had been in use for athletics and entertainment purposes for several decades.

In 2010, Brown University was in the preliminary phase of planning several renovations to the complex, including the replacement of a practice soccer field with a new field hockey field. The following spring, Brown University organized several community forums to discuss the proposed project with residents from the surrounding neighborhood. These forums provided an opportunity for the community to raise "questions and concerns" regarding the proposed renovations before the plans were submitted to the city for approval. Key was aware of a forum but chose not to attend. In or about May 2011, Brown University submitted an amendment to its Institutional Master Plan (IMP) to the Providence City Plan Commission (CPC), seeking approval for the various renovations to the complex. According to plaintiffs, the IMP included a sketch depicting the field hockey field in a different location from where it was subsequently

constructed, and it failed to indicate that the field would include a grandstand, press box, electronic scoreboard, and a public-address system. The IMP did state that the project would include:

> "1) the replacement of the existing natural-turf practice soccer field just south of Stevenson Field with a new Astro[T]urf field for field hockey;
> "2) the replacement of the existing natural-turf on Stevenson Field with Field-turf to allow soccer and lacrosse teams to practice on the field as well as play games;
> "3) the replacement of the existing lights on Stevenson Field with more efficient and lower glare fixtures;
> "4) the replacement of the existing bleachers (1500 seats) on Stevenson Field with a new 2000 seat stadium with restrooms, concessions, and ticketing;
> "5) the construction of a new 300-350 space parking garage immediately adjacent and hidden behind the stadium;
> "6) the installation of 'neck-downs' and a flasher on Lloyd Avenue to ensure safe pedestrian crossings near Moses Brown;
> "7) the replacement of an existing damaged storm sewer line running beneath the fields; and
> "8) repair of the traffic light at the intersection of Hope Street/Lloyd Avenue/Brook Street to increase efficiency of the intersection."

Later that summer, on July 19, 2011, the CPC, pursuant to Article IX, § 903.4 of the City of Providence Zoning Ordinances of 1994, as amended, held a public hearing to discuss Brown University's IMP.[1] According to the city, the CPC had previously provided all notice required

---

[1] Section 903.4 of Article IX of the City of Providence Zoning Ordinances provides:
> "Meetings and hearings. Meetings of the board shall be held at the call of the chair and at such other times as the board may determine. The chair may administer oaths and compel the attendance of witnesses. Applications for appeals, variances and for special use permits, as authorized in this ordinance may be addressed to the board. Prior to decision on such petitions and appeals, the board shall hold a public hearing on any application for appeal, variance or special use permit in an expeditious manner, after receipt, in proper form, of an application, and shall give public notice thereof at least fourteen (14) days prior to the

by law—i.e., the Providence zoning ordinances and the Rhode Island Zoning Enabling Act (the act).[2] Nevertheless, Key did not attend the meeting nor did he provide the CPC with any written objections.[3] At the meeting, the IMP was discussed by city officials and interested parties. As noted above, however, the IMP did not include certain features that form the core of plaintiffs' current controversy with Brown—specifically, the scoreboard, bleachers, press box, public-address system, and the correct location of the field. The IMP was approved by the CPC on July 22, 2011. Once approved, there was a twenty-day statutory period for an appeal to be filed to the board. The plaintiffs, however, did not appeal this decision.

The following spring, on April 11, 2012, before construction commenced, Brown University held an additional community forum to discuss the project with neighbors directly abutting the complex. On this occasion, Brown University hand-delivered letters, dated April 4, 2012, to its closest neighbors to be affected by the construction in the complex. In the letter, Brown University indicated that the forum was to "present[ ] details about the Stevenson Field improvement project, planned for May – September 2012." In particular, the letter stated that Brown would "be discussing the scope, timeline, details, and mitigation measures involved in the

---

date of the hearing in a newspaper of general circulation in the city."

[2] The Rhode Island Zoning Enabling Act (the act) authorizes each city and town council "to adopt, amend, or repeal, and to provide for the administration, interpretation, and enforcement of, a zoning ordinance." General Laws 1956 § 45-24-50(a). In pertinent part, the act provides:

"No zoning ordinance shall be adopted, repealed, or amended until after a public hearing has been held upon the question before the city or town council. The city or town council shall first give notice of the public hearing by publication of notice in a newspaper of general circulation within the city or town at least once each week for three (3) successive weeks prior to the date of the hearing * * *." Section 45-24-53(a).

[3] At his deposition, Key admitted that, although he "probably" saw the CPC's advertisements in The Providence Journal, he neither attended the community meetings or forums in the spring of 2011, nor any CPC meetings in 2011.

project, which [would] include installing a regulation field hockey field (AstroTurf) on the field just east of Meister Kavan, [and] resurfacing Stevenson Field with Field-Turf" among other things. Key acknowledges that he received the hand-delivered letter putting him on notice of the forum; but, nonetheless, he did not attend.[4] According to Brown University, construction on the complex began in May 2012.

On June 7, 2012, Brown University applied for a building permit for construction of athletic field bleachers at the complex. The permit issued described that Brown was permitted to build a field hockey stadium, a foundation for sport bleachers, and all related site works to construct open bleachers seating with a capacity of 505 occupants and "a combustible press box" on top of the structure at the athletic field. The permit was approved on June 14, 2012.

A month later, on July 10, 2012, Brown University personnel met with Key at a conference room in the complex to discuss the project. The following day, Key sent an email to Brown University requesting another meeting with its representatives, this time at the property. On July 12, 2012, Key again met with Brown officials. According to Key, in that meeting, he learned "for the first time" that Brown was installing a public-address system and scoreboard on the field. As a result, Key sent another email to Brown University communicating his concerns about what he believed were misrepresentations made at the July 10 meeting.

---

[4] When Key was asked why he did not attend the forum, after receiving the hand-delivered letter, he answered:

> "Because the letter stated that the regulation [field] hockey field was to be put on to Stevenson [F]ield, which did not abut my house and was far away. It did not mention there would be bleachers 60 feet from my house. It did not mention that [Brown] would put new lights up there. It did not mention a [public-address] system, and it did not mention the use of heavy equipment without precautionary measures to protect the historic homes. Had it done so, I would have attended, and I would have objected strenuously, but it didn't, so I didn't go."

Key then sent a letter written to the CPC, addressed to Christopher J. Ise and Jason Martin, principal planners for the Historic District Commission, dated August 2, 2012. In the letter, Key expressed his concern over Brown's project and also averred that he was "frankly astonished that there was not a more thorough questioning of the Brown University [IMP]," which had been "submitted to the [CPC] for approval."

The following day, August 3, 2012, plaintiffs, through counsel, sent Brown University a cease-and-desist letter, enunciating that the "renovation and new construction * * * ha[d] departed significantly from the IMP approved by the CPC and from representations [that had been] made directly to area residents by representatives of Brown University." In addition, the letter claimed that "Brown ha[d] failed to inform area residents of the scope and invasive nature of the work that it would employ to accomplish this unapproved construction."

Several weeks later, plaintiffs filed a verified complaint in Superior Court. The complaint named Brown University as defendant and alleged a violation of the applicable law, as it applied to the approved IMP, nuisance, and negligence, and asked the court for injunctive relief and property damages.

Thereafter, on September 18, 2012, plaintiffs, again through counsel, sent the city solicitor a letter requesting that the city file suit against Brown University pursuant to G.L. 1956 § 45-24-62 "to enjoin [Brown's] unlawful use [of the complex] and order the removal of the [field] hockey field * * *."[5] Approximately eight months later, on May 15, 2013, plaintiffs sent a letter to the Department of Inspections and Standards (the DIS), demanding enforcement of Brown University's IMP. In the letter, plaintiffs summarized the sequence of events for which

---

[5] Section 45-24-62 indicates, in pertinent part, that the "[S]upreme [C]ourt and the [S]uperior [C]ourt * * * shall, upon due proceedings in the name of the city or town, instituted by its city or town solicitor, have power to issue any extraordinary writ or to proceed according to the course of law or equity or both[.]"

they believed that relief should be granted, and enumerated the "[d]eficiencies" in Brown University's IMP. In closing, plaintiffs stated that "[a] cease and desist order addressed to Brown should issue from the [DIS] forthwith ordering Brown to immediately cease and desist using the [field] hockey field constructed in violation of applicable law and ordering Brown to remove the [field] hockey field and amenities."

The city took no action in response to plaintiffs' demands, causing plaintiffs to "appeal" from the "decision" of the DIS to the Building Board of Review. In a document dated June 14, 2013, plaintiffs based the appeal on DIS's failure to respond within the time required by § 801 of Article VIII of the City of Providence Zoning Ordinances.[6] According to the city, it did not process plaintiffs' June 14, 2013, submission because "[t]here is no legal vehicle for 'appealing' the [DIS's] failure to respond to a demand * * *."

Subsequently, on June 20, 2013, Brown University filed a motion for summary judgment as to count 1 of the complaint. In response, plaintiffs filed a motion to amend its complaint on July 24, 2013. Thereafter, on September 11, 2013, plaintiffs filed a verified second-amended complaint (the amended complaint), also naming the city as a defendant in the matter.

On October 1, 2013, plaintiffs sent a second demand letter to DIS. In responding to this demand, the city solicitor wrote a letter on October 4, 2013, indicating that plaintiffs' letter "appear[ed] to be identical to that sent to the [c]ity on May 15, 2013, with the exception of adding [five additional] legal conclusions * * *." Moreover, the city solicitor averred that the "[c]ity [did] not consider [the letter] to be a request for administrative action that require[d] a

---

[6] In pertinent part, § 801 of Article VIII of the City of Providence Zoning Ordinances provides that the "director shall issue a zoning certificate or provide information to the requesting party within fifteen (15) days of the written request. In the event that no written response is provided within that time, the requesting party shall have the right to appeal to the [zoning] board * * *." See also §1000.26 of Article X of the City of Providence Zoning Ordinances (defining "[b]oard" as "[t]he zoning board of review of the City of Providence").

response from the [c]ity." Furthermore, the letter indicated that the city would "object to any position [plaintiffs] may take that the [c]ity (or the DIS) ha[d] 'denied' [plaintiffs'] request, or that its failure to respond [was] evidence that [plaintiffs] lack[ed] redress through the administrative process, or [was] indicative of 'futility of seeking exhaustion of administrative remedies.'" Subsequent to the city's response, on October 21, 2013, plaintiffs filed another appeal with the Building Board of Review.

In Superior Court, defendants filed answers to the amended complaint. Thereafter, plaintiffs swiftly filed a "cross-motion" for summary judgment against Brown University and the city. On December 2, 2013, Brown University objected to plaintiffs' "cross-motion" for summary judgment. Shortly thereafter, on December 6, 2013, the city filed its own cross-motion for summary judgment as to count 1 of plaintiffs' amended complaint. A hearing was held on January 6, 2014, on which occasion the hearing justice denied plaintiffs' "cross-motion" for summary judgment and granted defendants' cross-motions for summary judgment. In granting summary judgment, the hearing justice found that plaintiffs lacked standing to seek a declaratory judgment regarding Brown University's alleged zoning violations and unlawful use of the field.

The plaintiffs filed a timely notice of appeal. In their appeal, plaintiffs contend that the hearing justice erred in: finding that they lacked standing to seek a declaratory judgment against defendants; refusing to exercise his jurisdiction under the Uniform Declaratory Judgments Act (G.L. 1956 chapter 30 of title 9); finding that plaintiffs failed to pursue other avenues of administrative redress; and not considering the exceptions to the doctrine of exhaustion of administrative remedies.

## II

## Standard of Review

"In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we examine the matter de novo and apply the same standards as those used by the trial court." Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001). "Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Id.

## III

## Discussion

The Uniform Declaratory Judgments Act (UDJA) "vests the Superior Court with the 'power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" N & M Properties, LLC v. Town of West Warwick, 964 A.2d 1141, 1144 (R.I. 2009) (quoting § 9-30-1). At the outset, when confronted with a UDJA claim, the inquiry is whether the Superior Court has been presented with "an actual case or controversy." Id. Without making this determination, the Court will not have jurisdiction to entertain the claim. Id. at 1144-45.

## A

## Standing

The plaintiffs argue that the hearing justice erred in holding that they had no standing to seek a declaratory judgment against Brown University for zoning violations and unlawful use of the field hockey field because they "have a personal stake in the outcome of [the] controversy" and suffered and continue to suffer personalized injuries as a direct result of Brown's violation of

the Providence zoning ordinances. The city and Brown University each contend that plaintiffs lack standing to compel discretionary action by the city because only the city solicitor can initiate actions with respect to zoning violations. The defendants also argue that plaintiffs lack standing because they did not exhaust their statutory administrative remedies under the act and the ordinance.

Justiciability requires that two components be present. N & M Properties, LLC, 964 A.2d at 1145. First, a plaintiff needs the requisite standing to bring suit. Id. Second, the plaintiff also must have "some legal hypothesis which will entitle the plaintiff to real and articulable relief." Id. (quoting Bowen v. Mollis, 945 A.2d 314, 317 (R.I. 2008)). "The question is whether the person whose standing is challenged has alleged an injury in fact resulting from the challenged statute." Id. (quoting Rhode Island Ophthalmological Society v. Cannon, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974)). "If he [or she] has, he [or she] satisfies the requirement of standing." Id. (quoting Cannon, 113 R.I. at 26, 317 A.2d at 129).

For questions on standing, "the court must focus 'on the party who is advancing the claim rather than on the issue the party seeks to have adjudicated.'" N & M Properties, LLC, 964 A.2d at 1145 (quoting Bowen, 945 A.2d at 317). In Cannon, we concluded that standing is satisfied when a plaintiff alleges "that the challenged action has caused him [or her] injury in fact, economic or otherwise[.]" Cannon, 113 R.I. at 22, 317 A.2d at 128 (quoting Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152 (1970)). Moreover, "[w]e have defined injury in fact as 'an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not conjectural or hypothetical.'" N & M Properties, LLC, 964 A.2d at 1145 (quoting Pontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997)). It is also recognized that the personal nature of a plaintiff's injury must "demonstrate a

personalized injury distinct from that of the community as a whole." Id. (quoting Meyer v. City of Newport, 844 A.2d 148, 151 (R.I. 2004)).

In other words, "when standing is at issue, the focal point shifts to the claimant, not the claim, and a court must determine if the plaintiff 'whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable' or, indeed, whether or not it should be litigated." Watson v. Fox, 44 A.3d 130, 135 (R.I. 2012) (quoting McKenna v. Williams, 874 A.2d 217, 226 (R.I. 2005)).

The second component of justiciability requires that "the facts postulated yield to some conceivable legal hypothesis which will entitle the plaintiff to some relief against the defendant." N & M Properties, LLC, 964 A.2d at 1145 (quoting Goodyear Loan Co. v. Little, 107 R.I. 629, 631, 269 A.2d 542, 543 (1970)). As we have articulated before, "[w]here a concrete issue is present and there is a definite assertion of legal rights coupled with a claim of a positive legal duty with respect thereto which shall be denied by [an] adverse party, then there is a justiciable controversy calling for the invocation of the declaratory judgment action." Id. (quoting 1 Anderson, Actions for Declaratory Judgments § 14 at 62 (2d ed. 1951)).

Consistent with the legislative intent to exclude individual landowners from instituting "unnecessary and unwarranted litigation" that would "serve only to unduly burden the courts and * * * harass the affected landowners," Town of Coventry v. Hickory Ridge Campground, Inc., 111 R.I. 716, 724, 306 A.2d 824, 829 (1973) (quoting Town of Lincoln v. Cournoyer, 95 R.I. 280, 286, 186 A.2d 728, 731 (1962)), § 45-24-60(b) bestows upon city and town solicitors the power to initiate suit "in the [S]upreme or [S]uperior [C]ourt, or any [M]unicipal [C]ourt," to enforce local zoning ordinances "to restrain the violation of, or to compel compliance with, the provisions of its zoning ordinance." See Zeilstra v. Barrington Zoning Board of Review, 417

A.2d 303, 309 (R.I. 1980) ("[O]nly the municipality, through its town solicitor, may initiate proceedings to enforce local zoning ordinances."). Under chapter 24 of title 45, the Supreme and Superior Courts may issue extraordinary writs, both in law and equity, "upon due proceedings in the name of the city or town, instituted by its city or town solicitor" to, among other things, compel compliance with any zoning ordinance and issue fines and other penalties. Section 45-24-62.

In the instant controversy, plaintiffs take issue with the hearing justice's ruling that they lacked standing to seek a declaration that Brown University's IMP was deficient under applicable laws and that the field's use is unlawful. Upon careful review of the record, we conclude that, in viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to plaintiffs, plaintiffs have standing because they have suffered an articulable injury in fact. See N & M Properties, LLC, 964 A.2d at 1145 (noting that standing inquiry satisfied when the plaintiff suffered some injury in fact).

Historically, issues of standing have often been vexing to tribunals across the nation. Indeed, Chief Justice Earl Warren of the United States Supreme Court noted that standing is one of "the most amorphous [concepts] in the entire domain of public law" and is "surrounded by the same complexities and vagaries that inhere in justiciability." Flast v. Cohen, 392 U.S. 83, 98-99 (1968). This case is no different. Here, plaintiffs, in their amended complaint, asked the Superior Court to declare the IMP deficient under applicable law and the field's use unlawful under the act. We must, however, focus on the parties who are advancing the claim and not on the issues to be adjudicated. See N & M Properties, LLC, 964 A.2d at 1145.

The plaintiffs assert that they have standing to bring suit because they have suffered particularized injury as a result of the field's construction and subsequent use—including

physical damage to their home, a decrease in their home's value, and a diminished use and enjoyment of their property. Viewing the facts in the light most favorable to plaintiffs, we conclude that plaintiffs have indeed alleged an injury in fact related to their home—plaintiffs' allegations as to their home provide measurable economic injuries that they have suffered as a result of Brown's project. See Town of Coventry, 111 R.I. at 723, 306 A.2d at 828 ("It is such owners of land abutting the proposed campground who are threatened with the special injury of economic loss through property devaluation if the alleged violation of the * * * zoning ordinance continues unabated.").

Accordingly, we must also determine if plaintiffs are the "proper part[ies] to request an adjudication of [the] particular issue * * *." Watson, 44 A.3d at 135 (quoting McKenna, 874 A.2d at 226). In P.J.C. Realty, Inc. v. Barry, 811 A.2d 1202, 1207 (R.I. 2002), we concluded that the Superior Court has the power to declare the city's duty to comply with zoning ordinances. In that case, the plaintiffs had brought a UDJA action seeking declaratory judgment against the City of Pawtucket after the city council unanimously denied a request to amend the zoning classification of a particular property. Id. at 1203, 1204. In finding that the issuance of a writ of mandamus was beyond the authority of the Superior Court, this Court held that the Superior Court was, however, within its purview when it declared that: "[t]he City of Pawtucket * * * ha[d] a duty to conform its zoning ordinances and amendments to the City's Comprehensive Plan * * *." Id. at 1207.

Here, plaintiffs properly asserted relief under the UDJA because of the particular injury they suffered as abutters to Brown. Indeed, plaintiffs' alleged economic damages stemming from Brown's construction are an injury in fact for standing purposes under the UDJA. See Canon, 113 R.I. at 22, 317 A.2d at 128. Similar to P.J.C. Realty, Inc., 811 A.2d at 1207, where

- 13 -

the plaintiffs had standing to seek a declaration that the city conform its zoning ordinances and amendments to Pawtucket's Comprehensive Plan in accordance with Rhode Island General Laws, plaintiffs here asked the Superior Court to make a declaration that the field's use is unlawful and that Brown's IMP is deficient under applicable laws.

Moreover, plaintiffs emphasize that they are not seeking to compel the city to enforce the zoning ordinance under the UDJA. Rather, they assert, they are "merely seeking a declaration that the zoning violations exist and that Brown and the [c]ity have certain duties and obligations under the [a]ct and the [o]rdinance, which they failed to meet." "Such a declaration is necessary," they further contend, "to support the[ ] remaining claims" of nuisance and negligence.

Section 9-30-1 provides that the Superior Court "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." As P.J.C. Realty, Inc., 811 A.2d at 1207, instructs, even though the declaratory-judgment power may not be utilized to compel the city to enforce the zoning regulations, "[t]he Superior Court has the power to construe a statute and to declare the rights and obligations of the parties."

For similar reasons, plaintiffs' failure to pursue whatever administrative remedies that may have been available to them does not preclude them from seeking declaratory relief under the UDJA. Their ability to challenge the decision of the zoning board has long since passed and, as previously noted, they are not seeking to compel the city to enforce the zoning ordinance. In count 1 of their amended complaint, they pray for a declaration that the IMP submitted by Brown is deficient and that the field hockey field "is an unlawful use under the * * * [z]oning [o]rdinance * * *." In support thereof, they allege that Brown failed to disclose in its IMP the correct location of the field hockey field and its "intent to construct a five hundred (500) seat

- 14 -

spectator assembly structure, press box, scoreboard and [public-address] system * * *." On appeal, plaintiffs argue that, if successful, such a declaration would serve as evidence supporting their claims of nuisance and negligence in their amended complaint.

As we declared in <u>Taylor v. Marshall</u>, 119 R.I. 171, 180, 376 A.2d 712, 716-17 (1977):

> "[E]ven if it were possible for [the] plaintiffs to obtain relief by administrative methods, the [UDJA] (§ 9-30-1) grants the Superior Court 'power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.' * * * [And] § 9-30-12 states that the [UDJA] is to be 'liberally construed and administered.'"

Moreover, Rule 57 of the Superior Court Rules of Civil Procedure provides, in pertinent part, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

In the case at bar, the plaintiffs allege that Brown omitted material elements of its construction project from its IMP, thereby depriving the CPC of an opportunity to review "the true project." As a consequence, the plaintiffs further contend, "[n]o public forums were held with respect to the [field] hockey field location, design and amenities prior to the submission or approval of the [IMP], as required." As abutting property owners, the plaintiffs have clearly established an injury in fact. Accordingly, we conclude that the hearing justice erred in finding that the plaintiffs have no standing with respect to count 1 of the amended complaint.

## IV

## Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court and remand for further proceedings. The record of this case shall be returned to the Superior Court.

- 15 -

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Stephen L. Key et al. v. Brown University et al. |
| **Case Number** | No. 2015-4-Appeal.<br>No. 2015-110-Appeal.<br>(PC 12-4449) |
| **Date Opinion Filed** | June 27, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Justin T. Shay, Esq.<br>Leah L. Miraldi, Esq. |
| | For Defendants:<br><br>Andrew M. Teitz, Esq.<br>Lisa Dinerman, Esq. |