July 9, 2024

**Supreme Court**

No. 2022-15-C.A.
(P2/19-672AG)

State                          :

    v.                         :

Jason Ortiz.                   :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email    opinionanalyst@courts.ri.gov,    of    any typographical  or  other  formal  errors  in  order  that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Jason Ortiz. | : |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendant, Jason Ortiz, appeals from a judgment of conviction and commitment[1] following a bench trial held in the Superior Court for Providence County. The defendant was charged with several criminal counts on only one of which was he found guilty—*viz.*, Count One (carrying a pistol without a license in violation of G.L. 1956 § 11-47-8(a)). On appeal, the defendant argues that § 11-47-8(a) violates the Second Amendment to the United States Constitution.[2]

---

[1]    A corrected judgment of conviction and commitment on one count of carrying a pistol without a license was entered on March 2, 2023.

[2]    The Second Amendment to the United States Constitution reads as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On February 26, 2019, a criminal information was filed, charging defendant with: (1) one count of carrying a pistol without a license (Count One); (2) one count of domestic assault (Count Two); (3) one count of resisting arrest (Count Three); and (4) one count of disorderly conduct (Count Four).[3]

Subsequently, on July 29, 2019, defendant filed a motion to dismiss Count One—the count which charged him with carrying a pistol without a license in violation of § 11-47-8(a).[4] The motion to dismiss was predicated on his contention

---

[3] Because the complaining witness did not appear for trial, Counts Two and Four (domestic assault and disorderly conduct respectively) were in due course dismissed by the state pursuant to Rule 48A of the Superior Court Rules of Criminal Procedure. In addition, at trial after the state rested, defendant moved to dismiss Count Three (resisting arrest), and the trial justice granted that motion.

[4] General Laws 1956 § 11-47-8(a) provides, in pertinent part:

> "No person shall, without a license or permit issued as provided in §§ 11-47-11, 11-47-12, and 11-47-18, carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed, except in his or her dwelling house or place of business or on land possessed by him or her[.] * * * Every person violating the provision of this section shall, upon conviction, be punished by imprisonment for not less than one nor more than ten (10) years, or by a fine up to

that § 11-47-8(a) was unconstitutional because, in his view, it violated his "constitutional right to keep and bear arms under the Second Amendment * * *." In his memorandum filed in support of his motion to dismiss, defendant cited and relied upon *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010), and *District of Columbia v. Heller*, 554 U.S. 570 (2008). With respect to the Second Amendment and the right to keep and bear arms, he argued that "[n]o other fundamental right enumerated in the US Constitution is subject to the requirement that the State grant permission to exercise it;" he contended that such a requirement is inconsistent with the fundamental "right of individuals to bear arms in self-defense."

Approximately a year later, on August 14, 2020, the state filed an objection to defendant's motion to dismiss. In its supporting memorandum, the state asserted that "the government can regulate one's ability to keep and bear arms publicly outside the home," and it contended that the pertinent Rhode Island statutory schemes did not violate defendant's rights under the Second Amendment. In addition, the state asserted in a supplemental memorandum that defendant lacked standing to challenge the provisions at issue because he "failed to allege an injury in fact resulting from the statutes"—in view of the fact that he had "never

ten thousand dollars ($10,000), or both, and except for a first conviction under this section, shall not be afforded the provisions of suspension or deferment of sentence, nor a probation."

- 3 -

applied for a license pursuant to § 11-47-11 or § 11-47-18, and therefore he was never denied a license under the statutes."

A hearing on defendant's motion to dismiss took place on October 29, 2020. At the hearing, defendant argued that the Second Amendment does "not require a person to apply for a license to exercise their constitutional rights in order to have standing;" he contended that he had met all the requirements for standing to challenge the criminal charge of carrying a pistol without a license. He added that any ruling that he lacked standing because he had not applied for a license would be a violation of his "procedural due process rights, his right to confront and cross-examine the witnesses," and "his right to be present in court during an evidentiary hearing." The defendant further asserted that he had "a fundamental right to carry a firearm upon his person on the streets of Rhode Island for the purposes of self-defense" and that the state had no "legitimate interest in prohibiting him to do so or in requiring him to seek permission from the State authorities to do so."

The defendant additionally contended that the holding in *Heller* to the effect that a citizen has a right to possess a firearm in the home "logically extends to the street." He further argued that the requirement in § 11-47-18(a) (which he noted "applies to the Attorney General") that there be a "proper showing of need" as justification for the issuance of a firearm license violates procedural due process

because a constitutional right should not be "subject to a review of the government to determine need." Similarly, defendant challenged the requirement in § 11-47-11(a) (which he noted is "directed at any city or town") that an applicant establish that he or she had a "good reason to fear an injury to his or her person or property or have any other proper reason for carrying a pistol or revolver."

The defendant argued that there was "nothing objective about either statute," that the statutes did not provide guidelines as to how the determinations were to be made, and that they were "not public safety statutes." For its part, the state contended that defendant did not have standing to challenge § 11-47-11 or § 11-47-18, given that he had "not established any injury in fact from those licensing statutes, because he never even attempted to apply for a license."

On December 15, 2020, the trial justice issued a written decision denying defendant's motion to dismiss. The trial justice observed that defendant "could never have obtained a carry permit, as he would have been unable to satisfy the statutory age and residence prerequisites, which he has not even challenged."[5] The trial justice also stated that he had "difficulty accepting [defendant's] claim that he enjoys automatic standing to contest this state's statutory permit policies." The trial justice further noted that § 11-47-11 and § 11-47-18 are integrally related to

---

[5] It is undisputed that, at the time of his arrest, defendant was nineteen years old and was a resident of Massachusetts.

§ 11-47-8(a),[6] and he added that § 11-47-11 and § 11-47-18 "cannot be so cavalierly disengaged from the criminal statute." In addition, the trial justice decided that, quite apart from his conclusion relative to the issue of defendant's lack of standing to assert the constitutional challenge, he would address the constitutional argument made by defendant. The trial justice ultimately concluded that the statutes in question were reasonably adopted to address the compelling and paramount government interest in "reducing catastrophic gun violence and the harm caused by the misuse of firearms."

A bench trial took place on July 26, 2021. The single witness to testify was Detective Jeffrey Furtado of the Pawtucket Police Department, who described an incident involving defendant that occurred on July 24, 2018. Detective Furtado began by testifying that he had responded to a domestic incident after dispatch received a 911 call from a woman (later identified as the complaining witness) to the effect that "she had been brutally beaten by her boyfriend," whom the woman named during the 911 call as defendant.

Detective Furtado testified that he proceeded to check the area and that he observed a person he believed to be the suspect walking along the sidewalk on Summer Street on the same side as the Pawtucket Public Library. Detective Furtado further testified that, when the suspect saw the police cruiser, he started

---

[6]     *See* footnote 4, *supra*.

- 6 -

walking toward the front entrance of the library. Detective Furtado added that, upon entering the library, he heard a loud bang. He stated that library employees directed him to where the suspect had gone; he thereafter saw the suspect leave through an emergency exit doorway. He further testified that he followed the suspect and saw him running through a "small alleyway." He confirmed that he was eventually able to catch up with the fleeing subject at a parking lot on North Union Street, where he apprehended him. At trial, Det. Furtado identified defendant as the person whom he apprehended on that occasion.

Detective Furtado testified that his dispatcher alerted him that a citizen had found a gun on North Union Street and that surveillance video from a business on that same day showed an individual wearing the same clothing as the suspect fleeing through the area where the gun was found. He further stated that a buccal swab DNA sample that was taken from defendant and tested by the forensic unit of the Department of Health indicated that defendant could not be eliminated as a source of DNA found on the seized weapon. Detective Furtado testified that, at the time of his arrest, defendant was nineteen years old and a resident of Brockton, Massachusetts.

Although defendant did not present evidence nor did he testify, defense counsel delivered a closing argument, in which he conceded that defendant did not have a license to carry a firearm. Upon reviewing the evidence, the trial justice

found defendant guilty on the sole remaining charge of the information—*viz.*, carrying a pistol without a license (Count One). At the conclusion of the trial, the trial justice sentenced defendant to five years imprisonment, with eighteen months to serve and the balance of the sentence suspended, with probation.

The defendant filed a premature but valid notice of appeal on August 11, 2021. A judgment of conviction entered on October 25, 2022.[7]

## II

## Analysis

## A

## Standing

On appeal, defendant contends that the trial justice's denial of his motion to dismiss must be reversed on the ground that § 11-47-8(a) violates the constitutional right to keep and bear arms guaranteed by the Second Amendment. Specifically, defendant relies upon *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), for the proposition that the Second Amendment guarantees individuals the freedom to carry firearms in public spaces and that it must not be subject to the broad discretion of public officials "to deny licenses based on their interpretation of subjective criteria like 'suitability,' 'proper reason,' and 'need' for a firearm."

---

[7] As noted *supra*, a corrected judgment of conviction and commitment on one count of carrying a pistol without a license was entered on March 2, 2023.

- 8 -

On the issue of standing, defendant argues that he has standing to assert that § 11-47-8(a) is unconstitutional "because he is being punished for violating an unconstitutional licensing scheme that is explicitly incorporated into the text of" § 11-47-8(a). The defendant avers that he has suffered an injury in fact from the challenged statute in that "the state charged him criminally with violating that statute, and he was convicted and sentenced to prison." The defendant further addresses the issue of standing by responding to the state's argument that "an attack on * * * § 11-47-8(a) does not encompass an attack on the licensing statutes;" defendant contends that the enforcement statute, which incorporates the two permitting statutes by reference, "rises and falls with the permitting statutes by its plain text."

For its part, the state does not dispute that defendant would ultimately have standing to challenge the constitutionality of § 11-47-8(a); rather, the state argues that defendant cannot sustain his independent challenge that § 11-47-8(a) is unconstitutional without first establishing that § 11-47-11(a) and § 11-47-18(a) are unconstitutional. And the state argues that defendant lacks standing to challenge the constitutionality of § 11-47-11 and § 11-47-18 because "he never applied for a license or permit to carry a firearm in Rhode Island."

This Court has stated that, "[a]t its core, inquiries into standing consider whether the party seeking relief has alleged such a personal stake in the outcome of

the controversy as to ensure concrete adverseness that sharpens the presentation of the issues." *1112 Charles, L.P. v. Fornel Entertainment, Inc.*, 159 A.3d 619, 625 (R.I. 2017) (internal quotation marks and deletion omitted). We have emphasized that the question of standing is a threshold inquiry into whether a party that is seeking relief is legally entitled to bring an action. *See id.* Specifically, the question of standing requires that the "party asserting standing must have an injury in fact that is (a) concrete and particularized * * * and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted). We have made clear that, "[f]or questions on standing, the court must focus on the party who is advancing the claim rather than on the issue the party seeks to have adjudicated." *Key v. Brown University*, 163 A.3d 1162, 1168 (R.I. 2017) (internal quotation marks omitted).

As we have previously noted, § 11-47-8(a) prohibits the possession of a firearm without a license, stating in pertinent part, as follows:

> "No person shall, without a license or permit issued as provided in §§ 11-47-11, 11-47-12, and 11-47-18, carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed, except in his or her dwelling house or place of business or on land possessed by him or her[.] * * * Every person violating the provision of this section shall, upon conviction, be punished by imprisonment for not less than one nor more than ten (10) years, or by a fine up to ten thousand dollars ($10,000), or both, and except for a first conviction under this section, shall not be afforded

the provisions of suspension or deferment of sentence, nor a probation."

Section 11-47-11(a), which provides one procedural route through which an individual may apply for a firearm license or permit (*viz.*, by applying to a city or town) provides, in pertinent part:

> "The licensing authorities of any city or town shall, upon application of any person twenty-one (21) years of age or over having a bona fide residence or place of business within the city or town, or of any person twenty-one (21) years of age or over having a bona fide residence within the United States and a license or permit to carry a pistol or revolver concealed upon his or her person issued by the authorities of any other state or subdivision of the United States, issue a license or permit to the person to carry concealed upon his or her person a pistol or revolver everywhere within this state for four (4) years from date of issue, if it appears that the applicant has good reason to fear an injury to his or her person or property or has any other proper reason for carrying a pistol or revolver, and that he or she is a suitable person to be so licensed."

The alternative licensing statute, § 11-47-18(a), which deals with an application to the Attorney General for a license or permit, provides in pertinent part:

> "The attorney general may issue a license or permit to any person twenty-one (21) years of age or over to carry a pistol or revolver, whether concealed or not, upon his or her person upon a proper showing of need, subject to the provisions of §§ 11-47-12 and 11-47-15; that license or permit may be issued notwithstanding the provisions of § 11-47-7."

- 11 -

To support his contention that one need not have applied for a license or permit in order to challenge what he considers is an unconstitutional scheme, defendant cites *Staub v. City of Baxley*, 355 U.S. 313 (1958), which involved a defendant who was charged with "the offense of Soliciting Members for an Organization without a Permit & License." *Staub*, 355 U.S. at 317. The defendant in *Staub* moved to dismiss the charge and argued that the permitting ordinance violated the First Amendment by "requiring, as conditions precedent to the exercise of those rights, the issuance of a 'license' which the Mayor and city council are authorized by the ordinance to grant or refuse in their discretion * * *." *Id.* The United States Supreme Court addressed the argument that "appellant lacked standing to attack the constitutionality of the ordinance because she made no attempt to secure a permit under it;" the Court stated that its decisions have "uniformly held that the failure to apply for a license under an ordinance which on its face violates the Constitution does not preclude review in this Court of a judgment of conviction under such an ordinance." *Id.* at 319. The Supreme Court ultimately struck down as invalid the licensing scheme at issue in that case because it made the enjoyment of speech "contingent upon the will of the Mayor and Council of the City" and subject to "uncontrolled discretion." *Id.* at 325.

The defendant also cites to *Bond v. United States*, 564 U.S. 211 (2011), which involved a claim that a state violated the Tenth Amendment to the United

States Constitution. *Bond*, 564 U.S. at 214. He further cites to *Smith v. Cahoon*, 283 U.S. 553 (1931), which dealt with a challenge on due process and equal protection grounds to a state statute that required auto transportation companies to obtain certificates of public convenience and necessity.[8] *Smith*, 283 U.S. at 556.

While we appreciate defendant's attempt to base his arguments on the above-referenced cases, upon reflection it is our view that the instant action poses factually and legally significant differences, rendering those cases non-dispositive. The defendant's constitutional challenge in this case involves the Second Amendment—not the First Amendment nor the Tenth Amendment—and he is not claiming that § 11-47-8(a) is unconstitutional because the Second Amendment prevents states from imposing licensing requirements; instead, he is contending that the particular licensing scheme that is explicitly made part and parcel of § 11-47-8(a) is unconstitutional.

Although we understand that defendant is asserting that he has standing to challenge § 11-47-8(a), which incorporates the two licensing statutes by explicit reference, we re-emphasize that defendant has not suggested that the state is not free to criminally penalize those who fail to procure a license to carry a firearm

---

[8]    Additionally, defendant points to two Second Amendment cases—one from the United States Court of Appeals for the Eleventh Circuit and one from the Supreme Court of Illinois. *See United States v. Wright*, 117 F.3d 1265, 1267 (11th Cir. 1997), *vacated in part*, 133 F.3d 1412 (11th Cir. 1998); *People v. Aguilar*, 2 N.E.3d 321, 323-24 (Ill. 2013). However, we do not view either of these cases as having persuasive value in the context of the instant case.

outside of their homes and within the boundaries of the state. The defendant instead only directly attacks the licensing statutes, and the fact remains that defendant is not in a position to be able to properly mount a constitutional challenge to either § 11-47-11 or § 11-47-18.

In the case at bar, defense counsel expressly conceded that defendant did not have the requisite firearm license. And, significantly, he does not claim to have ever sought a license or to have been denied a license pursuant to either of the two licensing statutes. *See State v. Wilson*, 543 P.3d 440, 445 (Haw. 2024) (stating that, because the defendant did not seek a license pursuant to the relevant firearm licensing statute, "he cannot claim the law's application procedures are unconstitutional as applied to him" and further stating that he cannot show "a specific present objective harm based on" the licensing statute). Accordingly, we are of the opinion that the factual context of this case precludes defendant from pursuing in court the constitutional challenge that he has outlined in his papers. In short, it is our view that defendant lacks standing to bring any challenge to the licensing scheme.

We hasten to add that defendant would not be eligible for a license or permit under either statute because he could not satisfy two objective requirements: age and residency. It is uncontested that defendant was nineteen years old when he was charged with possessing a firearm without a license or permit. Pursuant to

either § 11-47-11 or § 11-47-18, an individual must be at least twenty-one years old to be eligible for a license or permit. Additionally, it is also uncontested that defendant was a resident of Massachusetts at the time when he was found to be in possession of the firearm, whereas § 11-47-11 requires that an applicant be a Rhode Island resident or be licensed to carry a concealed firearm in another state in order to be eligible for a license or permit.

Accordingly, we hold that defendant does not have standing to challenge the licensing statutes because he did not apply for a permit to carry a handgun, nor would he have qualified for one had he applied; and because it is undisputed that defendant did not have a license to possess a firearm, his arguments must fail for want of standing.[9]

## B

### The Constitutionality of the Licensing Statutes

Because we have concluded that the defendant does not have standing to assert his constitutional challenge to the substantive provisions of § 11-47-11 and § 11-47-18, we decline to reach his arguments pertaining to same.

---

[9] Since defendant's constitutional challenge to § 11-47-8(a) is framed in terms of a challenge on constitutional grounds to the licensing statutes (§ 11-47-11 and § 11-47-18), which are explicitly incorporated into § 11-47-8(a), his entire challenge to the latter statute is fatally flawed.

- 15 -

## III

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jason Ortiz. |
| **Case Number** | No. 2022-15-C.A. (P2/19-672AG) |
| **Date Opinion Filed** | July 9, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State: <br><br> Christopher R. Bush <br> Department of Attorney General <br> For Defendant: <br><br> Kara J. Maguire <br> Rhode Island Public Defender |