**Dr. J. Jerry RODOS et al.,
Plaintiffs-Appellees,**

v.

**Julius C. MICHAELSON,
Defendant-Appellant.**

**No. 75–1230.**

United States Court of Appeals,
First Circuit.

Argued Nov. 3, 1975.

Decided Nov. 26, 1975.

---

Julius C. Michaelson, pro se.

Milton Stanzler, Providence, R. I., with whom Richard A. Boren and Abedon, Stanzler, Biener, Skolnik & Lipsey, Providence, R. I., were on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

After the Supreme Court's decisions in *Roe v. Wade*, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and *Doe v. Bolton*, 1973, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, which struck down both an old and a more modern series of abortion statutes, but left open certain areas to the states, the Rhode Island legislature amended its laws, but did so, we were obliged to find, in disregard of the Supreme Court's rulings. *See Doe v. Israel*, 1 Cir., 1973, 482 F.2d 156, *cert. denied*, 416 U.S. 993, 94 S.Ct. 2406, 40

L.Ed.2d 772. The statute involved in *Israel* exceeded permissible limits with regard to first trimester abortions. In the present action for a declaratory judgment and injunction,[1] naming the Rhode Island Attorney General as defendant, we are presented with a subsequent statute, relating to fetuses already "quick." R.I. Gen. Laws § 11–23–5. An alleged flaw is that the legislature provided an exception from the statutory restrictions only if an abortion is "necessary to preserve the life of such mother," when the Supreme Court had said the exception must apply to "life and health." *See Roe v. Wade*, 410 U.S., at 164–65, 93 S.Ct. 705. Defendant relies on such cases as *Henrie v. Derryberry*, N.D.Okl., 1973, 358 F.Supp. 719, 726 (three-judge court), where the district court abstained, saying the state court might save the statute by construing "life" to include "health." *Contra, Montalvo v. Colon*, D.P.R., 1974, 377 F.Supp. 1332, at 1344 n.26 (three-judge court) (per curiam). Even on the basis of *Henrie* it may be wondered how the Rhode Island legislature, which, unlike the Oklahoma legislature enacted its statute when it already had the Supreme Court's language before it, could be thought to have intended to say precisely what it did not.

■ However, we do not reach the question. Plaintiffs have failed to meet long recognized principles of standing and case-or-controversy requirements. U.S.Const. art. III, § 2; Federal Declaratory Judgment Act, 28 U.S.C. § 2201; *Golden v. Zwickler*, 1969, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113. Federal courts do not give advisory opinions, or grant relief to persons who fail to demonstrate a "personal stake in the outcome." *See Baker v. Carr*, 1962, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663.

Since these plaintiffs do not show such an interest, we make no substantive ruling, even though it might be said, if parties demonstrating a true interest were before the court, that as to them the statute would form the basis of an active controversy. *Cf. Baird v. Bellotti*, D.Mass., 1975, 393 F.Supp. 847, 852, (three-judge court), *prob. juris. noted* Nov. 17, 1975, —— U.S. ——, 96 S.Ct. 390, 46 L.Ed.2d 301.

Plaintiffs consist of some nineteen physicians who operate in the Women's and Infants Hospital, and Jane Doe, who was 17 to 18 weeks pregnant at the date of suit.[2] Shortly after the statute was enacted, plaintiff doctors ceased performing all saline abortion procedures, and, in effect, all abortions after the 16th week. Prior to that time, they had performed saline procedures during the 16th to 19th weeks (or up to 20 weeks—the record is not clear), but not beyond. Although miscalculations are possible, and the statutory definition of a "quick child"[3] does not specify a particular week, we find nothing in the record that suggests that even the most cautious physician could see any possible legal risk in performing saline procedures before age 20 weeks.

The only expert to testify, one of the plaintiff doctors, stated, simply, that the doctors stopped because of "fear of prosecution." When defendant first sought to question the basis of this apprehension, the court said, "[I]t must be self-evident . . . that they must fear prosecution. The entire hospital staff has stopped doing it, and they have only stopped it after the enactment of this law." It did, however, allow later cross-examination, and the doctor thereupon conceded that he had never known or heard of a fetus meeting the statutory definition "capable of surviving the trau-

1. The court granted the former, and found it unnecessary to grant the latter.

2. An intervening plaintiff, Rebecca Roe, adds nothing to the case.

3. Section 1, 3d para. " 'Quick Child'—for the purposes of this section 'quick child' shall mean an unborn child whose heart is beating, who is experiencing electronically-measurable brain waves, who is discernibly moving, and who is so far developed and matured as to be capable of surviving the trauma of birth with the aid of usual medical care and facilitie[s] available in this state."

ma of birth" before it was 24 weeks old. His margin of error in determining the age of a fetus was "at least one week" either way.

■ It may well be that valid fear of prosecution need not be measured in terms of total reasonableness, or with cold detachment. Nonetheless, it cannot be purely speculative; there must be something to weigh. Plaintiff doctors have expressed no interest in performing abortions beyond the 19th or 20th week. They have shown no basis for concern over a statute regulating conduct, at the earliest, at age 23 weeks. If evidence more favorable to them was available in any form, it was in no way called to our attention. We cannot adopt the court's suggestion that even if the doctor were "absolutely convinced" on the basis of scientific medical knowledge that there was no viability, it is sufficient that he is "not too sure" he would not be prosecuted. This approach emasculates the principles of standing. Like the court in *National Student Assoc. v. Hershey,* 1969, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1113–14, "[w]e are not persuaded that every plaintiff who alleges a . . . chilling effect and shivers in court has thereby established a case or controversy."[4] So far as the doctors are concerned, this is a classic example of a hypothetical case. *Cf. Golden v. Zwickler,* supra; *Roe v. Wade,* supra at 127–29, 93 S.Ct. 705.

■ The question as to Jane Doe is more unusual. Her position, put in its strongest light,[5] is that she needed an abortion at her 18th week status, but although the statute in no way prevented it, the doctors, assertedly because of the statute, refused her. Our question is, on this assumption, has Jane a justiciable complaint against the statute, or is her complaint simply against the doctors?

■ We are unhappy to touch upon professional ethics, and conceivably if we had a better record we would not have to do so. However, on the present record we must conclude that the doctors, no matter if reasonable in their opinion that the statute is improper on its face, have entirely overreacted, because in no shown circumstance does it apply to them. To put it in other terms, the doctors have engaged in an unwarranted boycott, rather than a legitimate strike against the statute. To permit this conduct on their part to give plaintiff Jane Doe standing to contest a law that is in no demonstrated way applicable to her, would be to allow the doctors to obtain indirectly, we might almost say directly, judicial relief to which they are not entitled. In this circumstance we can only regard Doe as an unhappy victim, caught in the middle.

In sum, we do not reach the question whether the legislature has disregarded the mandate of the Supreme Court, for we cannot, in good conscience, say that the Attorney General cannot stand on his rights.

*The judgment of the district court is reversed, and the complaint is ordered dismissed.*

---

4. In its opinion the district court stated that "upon questioning of the Court the defendant specifically declined to state that the termination of an estimated nineteen-week pregnancy could never fall within the purview of [the statute]." 396 F.Supp. at 773. We do not find this in the record. Assuming defendant so stated, we would regard this as no more than a declination to express a medical opinion. Plaintiffs do not meet their burden of proof by pointing to such a refusal.

5. Defendant says that Doe has not sufficiently shown that no Rhode Island doctor will perform an abortion for her. The record is perhaps murky, but we believe the court could find that no Rhode Island doctor reasonably available to Doe would perform the requested procedure. She has since had an abortion outside the state, a matter of no present relevance. *Doe v. Israel,* supra, 482 F.2d at 158. *Cf. Roe v. Wade,* supra, 410 U.S. at 124–25, 93 S.Ct. 705. If the statute unlawfully restricted her rights, it is no answer that she might adopt a less satisfactory alternative.