# United States Court of Appeals
## For the First Circuit

No. 99-2141

RHODE ISLAND MEDICAL SOCIETY, ET AL.,

Plaintiffs, Appellees,

v.

SHELDON WHITEHOUSE, ATTORNEY GENERAL OF THE STATE
OF RHODE ISLAND, IN HIS OFFICIAL CAPACITY,

Defendant,

_____

LINCOLN C. ALMOND, GOVERNOR FOR
THE STATE OF RHODE ISLAND,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, <u>U.S. District Judge</u>]

Before

Torruella, <u>Chief Judge</u>,
Lipez, <u>Circuit Judge</u>, and
Stearns,* <u>District Judge</u>.

Joseph S. Larisa, Jr., Executive Counsel, Claire Richards, Deputy Executive Counsel, Thomas M. Dickinson, and Pine & Cantor, on brief for appellant.

Catherine Weiss, Caitlin Borgmann, Talcott Camp, Jessie Hill, Reproductive Freedom Project, American Civil Liberties Union Foundation, Lynette Labinger and Roney & Labinger, on brief for appellees.

——————————————

February 12, 2001

——————————————

_____

*Of the District of Massachusetts, sitting by designation.

**Per Curiam**.  Governor Lincoln Almond has appealed a district court judgment, permanently enjoining enforcement of Rhode Island's ban on partial birth abortions, R.I. Gen. Laws § 23-4.12 ("the Act").  See Rhode Island Med. Soc'y v. Whitehouse, 66 F. Supp. 2d 288 (D. R.I. 1999).  We affirm.

Appellant does not contend that the Act differs in any significant way from the Nebraska statute at issue in Stenberg v. Carhart, 120 S. Ct. 2597 (2000).  Nor does he contest the merits of the district court's determination. Rather, he argues that, because appellees do not perform any post-viability abortions, they lack standing to challenge the Act as applied to post-viability abortions.  The lack of standing, he asserts, precluded the district court from enjoining any post-viability application of the Act.  This argument is a variation of the standing argument that appellant made below -- an argument that was rejected -- where he contended that the appellees lacked standing to challenge the Act because none of them performed the procedure which, under appellant's interpretation, was

-3-

prohibited by the Act.  See Rhode Island Med. Soc'y, 66 F. Supp. 2d at 301-04.[1]

Contrary to appellant's contention, this court's decision in Rodos v. Michaelson, 527 F.2d 582 (1st Cir. 1975), is not controlling here.  What appellant seeks to do is to cure the Act's facial defect of vagueness (which impermissibly draws appellees within its orbit) by declaring the Act applicable only to post-viability abortions.  However, unlike Rhode Island's "quick child" statute, R.I. Gen. Laws § 11-23-5, which the plaintiffs in Rodos sought to

---

[1] Appellant's citation to City News and Novelty, Inc. v. City of Waukesha, 121 S. Ct. 743 (2001), in his recent filing does not advance his standing argument.  In City News, the Court had granted certiorari to resolve a split in the circuits on the issue whether an unsuccessful applicant for an adult business license must be assured a prompt judicial determination on the merits of a license denial or simply a right to promptly file for judicial review.  Id. at 746. Two months after petitioning for certiorari review, however, City News withdrew its license renewal application and ceased operating as an adult business.  Id.  The Court dismissed its previously-granted writ of certiorari.  The case "no longer qualifie[d] for judicial review" because it had become moot by City New's subsequent action.  Id. at 747.
The instant case presents no similar posture.  The appellees had standing to challenge the Act because the murkiness of whether the Act described a constitutionally-permissible procedure chilled both their constitutional rights and the constitutional rights of their patients and potentially exposed them to criminal prosecution and civil liability.  See Rhode Island Med. Soc'y, 66 F. Supp. 2d at 304.  No subsequent conduct by the appellees has vitiated their standing or mooted this case.

challenge and which undisputedly applies only to a viable fetus, the Act's definition of the banned partial birth abortion procedure does not distinguish between pre- and post-viability abortion procedures. See Rhode Island Med. Soc'y, 66 F. Supp. 2d at 305. In effect, what appellant seeks to do is to sever an unconstitutional application of the Act from, what he contends would be, a constitutional application.

Severability is a matter of state law. Leavitt v. Jane L., 518 U.S. 137, 139 (1996) (per curiam). Under Rhode Island law, "a court may hold a portion of a statute unconstitutional and uphold the rest when the unconstitutional portion is not indispensable to the rest of the statute and can be severed without destroying legislative purpose and intent." Landrigan v. McElroy, 457 A.2d 1056, 1061 (R.I. 1983) (severing that portion of a statute providing for an ex parte hearing). "The test for determining the separability of portions of a statute is whether, at the time the statute was enacted, the legislature would have passed it absent the constitutionally objectionable provision." Id. (citation and internal quotation marks omitted).

It appears that the Rhode Island Legislature's purpose and intent was to ban the partial birth abortion procedure for all fetuses, nonviable and viable, as the Act draws no line between viability and nonviability. Would the Legislature have passed the Act banning the partial birth abortion procedure absent its application to a nonviable fetus? There is doubt on that score, in light of the fact that the "quick child" statute, banning *all* abortion procedures on a viable fetus (save to preserve the life of the mother), still stands on the books.

The Act does contain a severability provision, § 23-4.12-6. But, "[s]everability clauses, though probative of legislative intent, are not conclusive." Ackerley Communications of Mass. Inc, v. Cambridge, 135 F.3d 210, 215 (1st Cir. 1998). Moreover, "[a] severability clause requires textual provisions that can be severed." Reno v. American Civil Liberties Union, 521 U.S. 844, 882 (1997). Appellant does not argue that the Act's severability provision saves the Act, nor does it appear that it could do so because, as noted, the Act contains no "provisions, sections, subsections, sentences, clauses, phrases or words" distinguishing between nonviable and viable fetuses, which would make it capable of being severed. See Ackerley

-6-

Communications of Mass. Inc., 135 F.3d at 215-16 (concluding that a severability clause was unavailing since it only operated to sever invalidated "parts" of a city ordinance that sought to require the removal of off-site billboards, while those "parts" did not distinguish between banning display of commercial messages (a ban that possibly was constitutional) and noncommercial messages (a ban that was unconstitutional for lack of an on-site billboard ban)).

Even if what appellant would have this court do is sever an *application* of the Act, rather than any *section* of the Act, we may impose a limiting construction on a statute "only if it is readily susceptible to such a construction." Reno v. American Civil Liberties Union, 521 U.S. at 884 (citation and internal quotation marks omitted). The difficulty posed by accepting appellant's proposed treatment of the Act is aptly described by the Sixth Circuit in striking down Ohio's partial birth abortion statute:

> [T]he language of the ban simply makes it not susceptible to severance. Post-viability application of the ban cannot be separated from pre-viability application of the ban so that it may stand alone. There is no clause or word dealing with post-viability application of the ban. We essentially would have to rewrite the Act in order to create a provision which could stand by itself. This we cannot do. Accordingly, the

-7-

entire ban on the D & X procedure must
be struck down.

Women's Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 202
(6th Cir. 1997), cert. denied, 523 U.S. 1036 (1998); see
also Eubanks v. Stengel, 28 F. Supp. 2d 1024, 1041 (W.D. Ky.
1998) ("Nothing in the [Kentucky] Act distinguishes between
pre- and post-viability.  There is no particular section,
paragraph, sentence, or word that the Court could strike
leaving behind any coherent remains."), aff'd, 224 F.3d 576
(6th Cir. 2000).

The judgment of the district court is affirmed.