May 4, 2022

**Supreme Court**

No. 2020-66-Appeal.
(PC 19-6761)

(Concurrence and Dissent
begins on Page 26)

Michael Benson et al.          :

v.          :

Daniel McKee, in his official          :
capacity as Governor for the State of
Rhode Island, et al.

NOTICE:    This opinion is subject to formal revision
before publication in the Rhode Island Reporter.  Readers
are requested to notify the Opinion Analyst, Supreme
Court of Rhode Island, 250 Benefit Street, Providence,
Rhode Island 02903, at Telephone (401) 222-3258 or
Email:    opinionanalyst@courts.ri.gov,    of    any
typographical  or  other  formal  errors  in  order  that
corrections may be made before the opinion is published.

Michael Benson et al.          :

v.          :

Daniel McKee,[1] in his official          :
capacity as Governor for the State of
Rhode Island, et al.

Present:  Suttell, C.J., Goldberg, and Robinson, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme

Court on January 27, 2022, on appeal by the plaintiffs, Michael Benson; Nichole

Leigh Rowley; Nichole Leigh Rowley, as parent and next friend of Baby Roe; Jane

Doe; Jane Doe, as parent and next friend of Baby Mary Doe; and Catholics for

Life, Inc., dba Servants of Christ for Life (collectively plaintiffs).[2]  The plaintiffs

---

[1] Consistent with Rule 25(d) of the Superior Court Rules of Civil Procedure, defendants Gina Raimondo and Nicholas A. Mattiello have been substituted with Governor Daniel McKee and Speaker of the House of Representatives Joseph Shekarchi, respectively, as their current successors in office.

[2] We divide the plaintiffs into three categories, in alignment with the types of claims they assert.  First, Michael Benson, Nichole Leigh Rowley, and Jane Doe will be classified as "the adult plaintiffs"; second, Baby Roe and Baby Mary Doe

- 1 -

appeal from a Superior Court judgment following the grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure brought by the defendants—Daniel McKee, in his official capacity as Governor for the State of Rhode Island; Dominick J. Ruggerio, in his official capacity as President of the Rhode Island Senate; Joseph Shekarchi, in his official capacity as Speaker of the Rhode Island House of Representatives; Peter F. Neronha, in his official capacity as Attorney General for the State of Rhode Island; and Francis McCabe, in his official capacity as Clerk of the Rhode Island House of Representatives (collectively defendants).

The plaintiffs contend on appeal, essentially, that the trial justice committed reversible error by (1) dismissing their claims based on lack of standing; (2) reaching the merits of the case; and (3) shifting the burden of proof to plaintiffs.[3] For the reasons stated in this opinion, we affirm the judgment of the Superior Court in all respects.[4]

---

will be identified as "the unborn plaintiffs," despite having been born since the commencement of this action; and, third, Catholics for Life, Inc., dba Servants of Christ for Life will be referred to as "SOCL."

[3] We have endeavored to articulate plaintiffs' arguments from their appellate briefs and to simplify the substance of their contentions.

[4] We gratefully acknowledge the amicus briefs submitted by the American Civil Liberties Union of Rhode Island in support of defendants, and the Thomas More Society in support of plaintiffs.

The case before us involves a monumentally controversial issue as reflected in a deep and enduring societal divide. This Court appreciates the sensitive nature of the controversy surrounding the issue of the right to abortion, and we acknowledge the genuine concerns of the parties and amici in this case.[5]

**Facts and Travel**

In *Roe v. Wade*, 410 U.S. 113 (1973), the United States Supreme Court recognized that "the right of personal privacy includes the abortion decision" and declared that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." *Roe*, 410 U.S. at 154, 158. Following *Roe*, the United States District Court for the District of Rhode Island declared unconstitutional Rhode Island's criminal-abortion statute that prohibited abortions, except when necessary to preserve the life of the mother. *See Women of Rhode Island v. Israel*, No. 4605, slip op. at 3, 4 (D.R.I. Feb. 7, 1973); *Rhode Island Abortion Counseling Service v. Israel*, No. 4586, slip op. at 3, 4 (D.R.I. Feb. 7, 1973); *see also Doe v. Israel*, 358 F. Supp. 1193, 1195-96 (D.R.I. 1973). *See generally* Compiler's Notes to G.L. 1956 §§ 11-3-1–11-3-5 (Reenactment of 2002). That statute, among other

---

[5] *See Planned Parenthood of Southeastern Pennsylvania v. Casey, Governor of Pennsylvania*, 505 U.S. 833, 850 (1992) ("Men and women of good conscience can disagree, and we suppose some always shall disagree, about the profound moral and spiritual implications of terminating a pregnancy, even in its earliest stage."); *see also Roe v. Wade*, 410 U.S. 113, 116 (1973) ("We forthwith acknowledge our awareness of the sensitive and emotional nature of the abortion controversy, of the vigorous opposing views, even among physicians, and of the deep and seemingly absolute convictions that the subject inspires.").

things, criminalized the acts of "[p]rocuring, counseling, or attempting miscarriage[,]" § 11-3-1, as enacted by G.L. 1872, ch. 228, § 3, as well as any "[a]dvertising or selling services or drugs to procure miscarriage."[6] Section 11-3-4, as enacted by P.L. 1915, ch. 1219, § 2.

---

[6] This was the first iteration of Rhode Island's criminal-abortion statute, which included five sections, all of which were declared unconstitutional, as discussed *supra*. Three of these sections were procedural in nature and expanded on the criminalizing sections. *See* G.L. 1956 §§ 11-3-2, 11-3-3, and 11-3-5, *all invalidated by Women of Rhode Island v. Israel*, No. 4605, slip op. at 3, 4 (D.R.I. Feb. 7, 1973); *Rhode Island Abortion Counseling Service v. Israel*, No. 4586, slip op. at 3, 4 (D.R.I. Feb. 7, 1973). The first and fourth sections, prior to invalidation as set forth herein, criminalized abortion by providing:

> "11-3-1. Procuring, counseling, or attempting miscarriage.—Every person who, with the intent to procure the miscarriage of any pregnant woman or woman supposed by such person to be pregnant, unless the same be necessary to preserve her life, shall administer to her or cause to be taken by her any poison or other noxious thing, or shall use any instrument or other means whatsoever or shall aid, assist or counsel any person so intending to procure a miscarriage, shall if the woman die in consequence thereof, be imprisoned not exceeding twenty (20) years nor less than five (5) years, and if she do not die in consequence thereof, shall be imprisoned not exceeding seven (7) years nor less than one (1) year: provided that the woman whose miscarriage shall have been caused or attempted shall not be liable to the penalties prescribed by this section." (Enacted by G.L. 1872, ch. 228, § 3.)

> "11-3-4. Advertising or selling services or drugs to procure miscarriage.—Every person who knowingly advertises, prints, publishes, distributes or circulates, or knowingly causes to be advertised, printed, published,

Soon after, the Rhode Island General Assembly hastily enacted another criminal-abortion statute set forth in the same chapter and title as the first version, designated as §§ 11-3-1 through 11-3-3, maintaining the same language, but inserting new language in §§ 11-3-4 and 11-3-5 (the criminal-abortion statute). *See* P.L. 1973, ch. 15, § 2. This version of § 11-3-4 declared that "human life commences at the instant of conception and that said human life * * * is a person within the * * * meaning of the fourteenth amendment of the constitution of the United States[.]" Section 11-3-4, as enacted by P.L. 1973, ch. 15, § 2. The United States District Court again found these sections unconstitutional on their face, *see*

---

distributed or circulated, any pamphlet, printed paper, book, newspaper, notice, advertisement or reference containing words or language giving or conveying any notice, hint or reference to any person, or to the name of any person, real or fictitious, from whom, or to any place, house, shop or office where, any poison, drug, mixture, preparation, medicine, or noxious thing, or any instrument or means whatsoever, or any advice, direction, information or knowledge, may be obtained for the purpose of causing or procuring the miscarriage of a woman pregnant with child, or who knowingly exhibits, advertises or sells to be used for such purpose any poison, drug, mixture, preparation, medicine, noxious thing, instrument or means whatsoever, or who, with or without any charge therefor, gives to any person any advice, information, instruction or direction for the purpose of causing or assisting in any such miscarriage, shall be punished by imprisonment for not more than two (2) years, or by a fine of not more than one thousand dollars ($1,000), or by both." (Enacted by P.L. 1915, ch. 1219, § 2.)

*Doe*, 358 F. Supp. at 1199, and the United States Court of Appeals for the First Circuit agreed with that decision. *See Doe v. Israel*, 482 F.2d 156, 159 (1st Cir. 1973).

Undaunted, in 1975 the Legislature enacted another abortion-related statute, G.L. 1956 § 11-23-5, as enacted by P.L. 1975, ch. 231, § 1 (the quick child statute), criminalizing the willful killing of an unborn "quick child[,]" defined as "an unborn child whose heart is beating, who is experiencing electronically-measurable brain waves, who is discernibly moving, and who is so far developed and matured as to be capable of surviving the trauma of birth with the aid of usual medical care and facilities available in this state." Section 11-23-5(c), as enacted by P.L. 1975, ch. 231, § 1. After a successful challenge in federal court in which the statute was declared unconstitutional, the case ultimately was dismissed on appeal in the circuit court due to lack of standing. *See Rodos v. Michaelson*, 396 F. Supp. 768, 778 (D.R.I. 1975), *rev'd*, 527 F.2d 582, 584, 585 (1st Cir. 1975).[7]

Similarly, in 1997 the General Assembly enacted a new statute to prohibit partial birth abortion. *See* G.L. 1956 chapter 4.12 of title 23, as enacted by P.L.

---

[7] It is noteworthy, however, that while declining to issue a substantive ruling, the First Circuit pointed to "[a]n alleged flaw [in] that the legislature provided an exception from the statutory restrictions only if an abortion [was] 'necessary to preserve the life of such mother,' when the Supreme Court had said the exception must apply to 'life and health [of the mother]'"—an obviously unconstitutional provision. *Rodos v. Michaelson*, 527 F.2d 582, 584 (1st Cir. 1975) (quoting *Roe*, 410 U.S. at 164-65).

1997, ch. 76, § 2. A year later, the United States District Court for the District of Rhode Island declared that statute unconstitutional, and the circuit court affirmed that decision. *See Rhode Island Medical Society v. Whitehouse*, 66 F. Supp. 2d 288, 294-95 (D.R.I. 1999), *aff'd*, 239 F.3d 104 (1st Cir. 2001).

In 2019 the General Assembly enacted the Reproductive Privacy Act, G.L. 1956 chapter 4.13 of title 23 (the RPA), effectively granting a right to abortion in line with *Roe*, and repealing certain statutes otherwise prohibiting abortion in this state that were flatly unconstitutional.[8] *See* P.L. 2019, ch. 27, §§ 1–2, 4–7. The plaintiffs initiated this action in the Superior Court on June 19, 2019, seeking to halt the passage of House Bill 5125 Substitute B, which later became the RPA; the trial justice denied plaintiffs' request for injunctive relief. Upon passage, plaintiffs filed an amended complaint seeking to challenge the General Assembly's authority to enact the RPA, and also seeking a declaration of their legal rights and status under certain statutes that were repealed by the RPA. In response, defendants filed a motion to dismiss pursuant to Rule 12(b)(6), which the trial justice granted. The plaintiffs timely appealed.

---

[8] The statutes repealed by the RPA included the criminal-abortion statute and the quick child statute, as well as G.L. 1956 chapter 4.8 of title 23; chapter 4.12 of title 23; and G.L. 1956 chapter 18 of title 27. *See* P.L. 2019, ch. 27, §§ 2, 4–7. As discussed *supra*, the criminal-abortion statute and chapter 4.12 of title 23 had already been declared unconstitutional by the federal court. *See Rhode Island Medical Society v. Whitehouse*, 66 F. Supp. 2d 288, 294-95 (D.R.I. 1999), *aff'd*, 239 F.3d 104 (1st Cir. 2001); *see also Doe v. Israel*, 358 F. Supp. 1193, 1195-96 (D.R.I. 1973).

## Standard of Review

"The sole function of a motion to dismiss is to test the sufficiency of the complaint." *Gannon v. City of Pawtucket*, 200 A.3d 1074, 1077 (R.I. 2019) (quoting *Narragansett Electric Company v. Minardi*, 21 A.3d 274, 277 (R.I. 2011)). "When we review the grant of a motion to dismiss pursuant to Rule 12(b)(6), we apply the same standard as the hearing justice." *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017) (quoting *Tri-Town Construction Company, Inc. v. Commerce Park Associates 12, LLC*, 139 A.3d 467, 478 (R.I. 2016)). "A motion to dismiss may be granted only when it is established beyond a reasonable doubt that a party would not be entitled to relief from the defendant under any set of conceivable facts that could be proven in support of its claim." *Id.* (quoting *Tri-Town Construction Company, Inc.*, 139 A.3d at 478).

Under this standard, this Court confines its review "to the four corners of the complaint, assume[s] that the allegations set forth are true, and resolve[s] any doubts in favor of the [complainant]." *Chase*, 160 A.3d at 973 (quoting *Tri-Town Construction Company, Inc.*, 139 A.3d at 478). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Alternative*

*Energy, Inc. v. St. Paul Fire and Marine Insurance Company*, 267 F.3d 30, 33 (1st Cir. 2001)).

**Analysis**

The plaintiffs allege that at this stage of litigation an "identifiable trifle is enough for standing," quoting Kenneth C. Davis, *Standing: Taxpayers and Others*, 35 U. Chi. L. Rev. 601, 613 (1968), and that all of these plaintiffs have claims of status and constitutional guarantees. The plaintiffs also claim that the trial justice erroneously reached the merits. In the alternative, they contend that the General Assembly did not have the constitutional authority to enact the RPA after (1) the repeal of the continuing powers clause in article 6, section 10 of the Rhode Island Constitution, which, they argue, stripped the General Assembly of its plenary powers,[9] and (2) based on the restrictive language concerning abortion set forth in article 1, section 2 of our constitution, which includes the state's constitutional guarantees of equal protection and due process, but provides that "[n]othing in this section shall be construed to grant or secure any right relating to abortion or the funding thereof." R.I. Const., art. 1, § 2; *see* R.I. Const., art. 6, § 10, *repealed by* 2003 R.I. Acts & Resolves 189-193.

---

[9] Article 6, section 10 of our constitution, which was repealed in 2003, stated, "Continuation of previous powers. The general assembly shall continue to exercise the powers it has heretofore exercised, unless prohibited in this Constitution." R.I. Const., art. 6, § 10, *repealed by* 2003 R.I. Acts & Resolves 189-193.

The defendants argue that plaintiffs are without standing to bring these claims because they do not allege an injury-in-fact and have failed to present some legal hypothesis that would entitle them to real and articulable relief.[10] The defendants claim that the General Assembly had the authority to enact the RPA because the repeal of the continuing powers clause in the state constitution is of no moment to the Legislature's authority to enact law. They also contend that a careful reading of article 1, section 2 clearly reveals that the restrictive sentence upon which plaintiffs rely does not restrain the General Assembly from enacting the RPA because that sentence is confined to article 1, section 2.

In deciding whether a party has standing to maintain a claim, we "examine the complaint to determine if plaintiffs are entitled to relief under any conceivable set of facts. This analysis requires our resolution of the overarching issue in this case—whether the Court is confronted with a justiciable controversy." *McKenna v. Williams*, 874 A.2d 217, 225 (R.I. 2005). Thus, in order to obtain judicial review, "[t]he plaintiffs must have standing to bring this action[.]" *Id.* Nevertheless, we address the meaning of article 1, section 2 of our state constitution on a limited basis. In so doing, we are not concerned with the subject matter of the RPA— abortion—but are singularly confronted with the question of the General

---

[10] Although Baby Doe and Baby Mary Roe have been born since initiation of this action, defendants have not argued that those plaintiffs' claims are moot, mainly because they argue that the case is not ripe.

Assembly's constitutional authority to enact the RPA. "We shall undertake this analysis as the final interpreter of the Rhode Island Constitution and state law." *Id.* (citing *Wigginton v. Centracchio*, 787 A.2d 1151, 1154 (R.I. 2001)).

As a preliminary matter, we pause to address plaintiffs' contention that the trial justice improperly imposed upon them a higher burden of proof. We disagree. In her bench decision, the trial justice correctly articulated the proper burden of proof for a motion to dismiss pursuant to Rule 12(b)(6). We also note that plaintiffs' argument that the trial justice could not reach the merits in the context of this case is misplaced. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").[11] Lastly, plaintiffs suggest that the trial justice erroneously failed to consider or apply federal law; they are mistaken.

## A

### Standing

A party who lacks standing to pursue a cause of action cannot prevail under any conceivable set of facts. *See Cruz v. Mortgage Electronic Registration Systems, Inc.*, 108 A.3d 992, 996 (R.I. 2015) ("Standing is a threshold inquiry into

---

[11] *See Gliottone v. Ethier*, 870 A.2d 1022, 1025 (R.I. 2005) ("[W]e have said many times that in situations in which our own case law is sparse in the area of civil procedure, we shall consult the precedents in the federal courts since our Superior Court Rules are patterned after the federal rules.") (quoting *Kelvey v. Coughlin*, 625 A.2d 775, 776 (R.I. 1993)).

- 11 -

whether the party seeking relief is entitled to bring suit.") (quoting *Narragansett Indian Tribe v. State*, 81 A.3d 1106, 1110 (R.I. 2014)).  In order for a case to be justiciable, a party must have "standing to bring suit" and present "some legal hypothesis which will entitle the plaintiff to real and articulable relief." *Key v. Brown University*, 163 A.3d 1162, 1168 (R.I. 2017) (second quote quoting *N & M Properties, LLC v. Town of West Warwick*, 964 A.2d 1141, 1145 (R.I. 2009)).  Simply put, a plaintiff must have suffered injury-in-fact to have standing to commence a suit. *Id.*  The plaintiff's injury must be "concrete and particularized[,] * * * not conjectural or hypothetical." *Id.* at 1169 (quoting *N & M Properties, LLC*, 964 A.2d at 1145).

In addressing the question of standing, "the court must focus on the party who is advancing the claim rather than on the issue the party seeks to have adjudicated." *Key*, 163 A.3d at 1168 (quoting *N & M Properties, LLC*, 964 A.2d at 1145).  The plaintiff must "demonstrate a personalized injury distinct from that of the community as a whole." *Id.* at 1169 (quoting *N & M Properties, LLC*, 964 A.2d at 1145).  Critically, "generalized claims alleging purely public harm are an insufficient basis for sustaining a private lawsuit." *Watson v. Fox*, 44 A.3d 130, 136 (R.I. 2012).  The parties bringing the action "must demonstrate that [they] ha[ve] a stake in the outcome that distinguishes [their] claims from the claims of the public at large." *In re 38 Studios Grand Jury*, 225 A.3d 224, 233 (R.I. 2020)

- 12 -

(quoting *Watson*, 44 A.3d at 136); *see United States v. Hays*, 515 U.S. 737, 743 (1995) ("The rule against generalized grievances applies with as much force in the equal protection context as in any other."). "[S]tanding is generally limited to those plaintiffs asserting their own rights, not the rights of others." *Mruk v. Mortgage Electronic Registration Systems, Inc.*, 82 A.3d 527, 535 (R.I. 2013).

The Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9 (the UDJA), "vests the Superior Court with the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Key*, 163 A.3d at 1168 (quoting *N & M Properties, LLC*, 964 A.2d at 1144); *see* § 9-30-1. "At the outset, when confronted with a UDJA claim, the inquiry is whether the Superior Court has been presented with 'an actual case or controversy.'" *Key*, 163 A.3d at 1168 (quoting *N & M Properties, LLC*, 964 A.2d at 1144). "A declaratory-judgment action may not be used 'for the determination of abstract questions or the rendering of advisory opinions,'" *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I. 1997) (quoting *Lamb v. Perry*, 101 R.I. 538, 542, 225 A.2d 521, 523 (1967)), "nor does it 'license litigants to fish in judicial ponds for legal advice.'" *Sullivan*, 703 A.2d at 751 (quoting *Goodyear Loan Company v. Little*, 107 R.I. 629, 631, 269 A.2d 542, 543 (1970)).

The three categories of plaintiffs before this Court have set forth individual claims. Additionally, each plaintiff seeks a declaration that the RPA is void under

the Rhode Island Constitution, as well as an injunction to suspend the RPA's operation. Because plaintiffs' standing under the UDJA is dependent upon standing for the underlying claims, we limit our review to those underlying claims.

**1**

**The Adult Plaintiffs**

The adult plaintiffs' claims may be summarized as alleged voter suppression and deprivation of the right to vote. The adult plaintiffs argue that they have standing because they are "asserting a plain, direct and adequate interest in maintaining the effectiveness of their votes, * * * not merely a claim of the right, possessed by every citizen, to require that the Government be administered according to the law[,]" quoting *Baker v. Carr*, 369 U.S. 186, 208 (1962). (Internal quotation marks, citations, and emphasis omitted.)[12] These plaintiffs contend that they specifically pled that "Defendants wrongly 'suppressed' their negative vote against Defendants' passage and signing of the RPA." Viewing the allegations in their pleadings in the light most favorable to the adult plaintiffs, we are of the opinion that they lack standing to bring this action under any conceivable set of facts. The adult plaintiffs merely assert that they had the right to vote against

---

[12] The plaintiffs cite to several federal cases to support their contentions; however, these cases are not applicable to the facts and allegations in plaintiffs' action. *See Gill v. Whitford*, 138 S. Ct. 1916, 1929-30 (2018) (vote dilution claim based on partisan gerrymandering); *Reynolds v. Sims*, 377 U.S. 533, 568 (1964) (dilution claims based on legislative apportionment); *Baker v. Carr*, 369 U.S. 186, 187-88, 208 (1962) (same).

passage of the RPA and were deprived of that right. However, no member of the public—other than elected legislators—was afforded an opportunity to vote for or against its enactment. We know of no authority to suggest that a general election or referendum was mandated in this instance, nor do the adult plaintiffs provide us with any authority.

In *Burns v. Sundlun*, 617 A.2d 114 (R.I. 1992), this Court was faced with a similar set of facts. In *Burns*, the plaintiff claimed that he had been denied the "right to vote on the establishment of off track betting and the extension of an existing gambling activity[,]" which he argued must have been decided by a public referendum, as required by G.L. 1956 § 41-10-2 (1990 Reenactment). *Burns*, 617 A.2d at 115, 116. We determined that this alleged injury was "shared by each and every registered voter in the State of Rhode Island" and that "[t]he plaintiff ha[d] failed to allege his own personal stake in the controversy that distinguishe[d] his claim from the claims of the public at large." *Id.* at 116. The same reasoning applies to the case at bar.

The adult plaintiffs do not assert a particular injury that distinguishes them from other voters, save for the purported deprivation of an opportunity to vote against passage of the RPA, which they suggest, with no citation to authority, required voter approval. The adult plaintiffs have not been treated or placed in a different position, because no other registered voters were afforded the right to

vote on the passage of the RPA.  At best, this is a generalized grievance shared with the public at large, because there was no general election or referendum where anyone cast a vote.  Indeed, in their prayer for relief, plaintiffs requested "[a] declaration that Plaintiffs, and *all* the citizens of Rhode Island, have a right to vote, for or against, the establishment of a new fundamental 'right' to abortion (and the funding thereof) in the State of Rhode Island." (Emphasis added.)  The adult plaintiffs therefore acknowledge that their claims are identical to those of the voting public.  Accordingly, the trial justice correctly found that the adult plaintiffs lacked standing in this case.[13]

## 2

### The Unborn Plaintiffs

The unborn plaintiffs essentially claim that (when this action commenced) they were "persons" under the UDJA because they fall within the language of § 11-3-4 of the criminal-abortion statute, as enacted by P.L. 1973, ch. 15, § 2, declaring that "human life commences at the instant of conception and that said human life * * * is a person * * *."  Additionally, Baby Mary Doe claims that she also falls within the definition of "quick child" under § 11-23-5(c), as enacted by P.L. 1975, ch. 231, § 1.  The unborn plaintiffs argue that, when the General

---

[13] The plaintiffs also allege that the RPA amends the Rhode Island Constitution, and, thus, they were entitled to vote on that issue.  We disagree and further address this argument *infra*.

- 16 -

Assembly in 2019 repealed these statutes, upon which statutes they base their standing, they were stripped of their legal rights and status and suffered harm. *See* P.L. 2019, ch. 27, §§ 2, 4 (repealing the criminal-abortion statute and the quick child statute). They are mistaken.

The United States Supreme Court in *Roe* held that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." *See Roe*, 410 U.S. at 158. This Court has acknowledged that "state constitutional and statutory law is subordinate to * * * 'the [United States] Constitution[.]'" *McKenna*, 874 A.2d at 237 (quoting *Testa v. Katt*, 330 U.S. 386, 391 (1947)). Accordingly, the unborn plaintiffs fail to assert a legally cognizable and protected interest as persons pursuant to these repealed statutes, which are contrary to the United States Constitution as construed by the United States Supreme Court.

Furthermore, with regard to the unborn plaintiffs' standing as a "person" under § 11-3-4, before the RPA was enacted, the entirety of the criminal-abortion statute—which, in part, prohibited the "[p]rocuring, counseling, or attempting miscarriage"—was declared unconstitutional under the United States Constitution by the United States District Court for the District of Rhode Island. *Doe*, 358 F. Supp. at 1196; *see also* § 11-3-1, as enacted by P.L. 1973, ch. 15, § 2, and later amended by P.L. 1974, ch. 118, § 3. Therefore, at the time the RPA was enacted, the unborn plaintiffs had no legal rights or status under chapter 3 of title 11. With

- 17 -

respect to Baby Mary Doe's standing under the quick child statute—which criminalized the willful killing of an unborn "quick child"—this criminal statute did not afford private citizens any legal rights. *See* § 11-23-5, as enacted by P.L. 1975, ch. 231, § 1. Thus, this statute did not provide Baby Mary Doe with any "legally cognizable" claim. *See McKenna*, 874 A.2d at 226.

Lastly, the unborn plaintiffs failed to allege any concrete and actual (or imminent) injury at the time they sought judicial relief. *See Key*, 163 A.3d at 1169. There was no suggestion in their pleadings that the unborn plaintiffs were in danger or somehow threatened as potential crime victims. In fact, each was born during the pendency of this case. Accordingly, we conclude that, because the unborn plaintiffs lacked standing, their claims were properly dismissed.

**3**

**The Servants of Christ for Life**

The corporate plaintiff, the SOCL, alleges claims that are derivative from those of the unborn plaintiffs, as well as its own injury to "its 'legal relations' and 'status' as advocates for the unborn." With respect to the derivative claims, because we have determined that the unborn plaintiffs lack standing, these derivative claims similarly fail. Turning to the SOCL's individual claim to its right to advocate for the unborn, this is a disqualifying abstract injury. *See Sullivan*, 703 A.2d at 751 ("A declaratory-judgment action may not be used 'for the

- 18 -

determination of abstract questions[.]'") (quoting *Lamb*, 101 R.I. at 542, 225 A.2d at 523). The SOCL has failed to show that it has suffered any injury or is in imminent danger of harm. *See Key*, 163 A.3d at 1169. Without question, the SOCL may continue to advocate for the unborn, but not in the context of this case. Because plaintiffs have not provided any authority supporting their contentions, the SOCL is without standing in this action.

**4**

**Substantial Public Interest**

The plaintiffs claim that, even if they cannot establish an injury-in-fact, the substantial-public-interest exception operates to confer standing. We disagree. Although plaintiffs' contentions implicate an important question as they challenge the Legislature's authority to enact laws, their substantive claims with respect to the constitutionality of the RPA itself are not a matter of substantial public interest because this question has been answered by the United States Supreme Court.

**B**

**The General Assembly's Authority to Enact the RPA**

Because we are mindful of the critical public importance that attaches to a direct challenge to the General Assembly's constitutional authority to enact legislation, we briefly turn to that specific issue. *Cf. McKenna*, 874 A.2d at 230 ("Although the foregoing holdings [based on standing] are determinative of the

issues before this Court, we are mindful of the public importance that attaches to such a direct challenge to an official's title to office [in accordance with the state constitution].").

**1**

**Repeal of Article 6, Section 10**

"In November of 2004, the electorate of the State of Rhode Island approved the so-called separation of powers amendments. These amendments ushered in four fundamental changes to the Rhode Island Constitution and, for the first time in [the state's] history, clearly and explicitly established three separate and distinct departments of government." *In re Request for Advisory Opinion from House of Representatives (Coastal Resources Management Council)*, 961 A.2d 930, 933 (R.I. 2008). Relevant to the case at bar, "[a]rticle 6, section 10 [of the state's constitution], which had vested broad 'continuing powers' in the General Assembly, was repealed[.]" *Id.* However, "the separation of powers amendments did not, either explicitly or implicitly, limit or abolish the power of the General Assembly in any other area where we have previously found its jurisdiction to be plenary." *Id.* at 935-36 (footnotes omitted). This is settled law.

"The General Assembly possesses the broad and plenary power to make and enact law, 'save for the textual limitations that are specified in the Federal or State Constitutions.'" *East Bay Community Development Corporation v. Zoning Board*

*of Review of Town of Barrington*, 901 A.2d 1136, 1150 (R.I. 2006) (alteration omitted) (quoting *Cherenzia v. Lynch*, 847 A.2d 818, 822 (R.I. 2004)). "In the areas where the General Assembly possesses plenary power, 'all * * * determinations are left to the General Assembly's broad discretion to adopt the means it deems "necessary and proper" in complying with the constitutional directive.'" *In re Request for Advisory Opinion from House of Representatives (Coastal Resources Management Council)*, 961 A.2d at 938 (brackets and emphasis omitted) (quoting *City of Pawtucket v. Sundlun*, 662 A.2d 40, 56 (R.I. 1995)).

Despite the repeal of article 6, section 10, the broad power and prerogative to enact and repeal law that pertains to the health and safety of its constituents remains with the General Assembly. *See generally* G.L. 1956 title 23, governing "Health and Safety." Next, we look to the question of whether a restraint of the Legislature's power to enact or repeal laws concerning abortion resides in article 1, section 2 of the Rhode Island Constitution.

**2**

**Article 1, Section 2**

In 1986 the Rhode Island Constitutional Convention, through Resolution 86-00032 (Sub. A), as amended, revised article 1, section 2 of the state's constitution to include the due process and equal protection language of the Fourteenth

- 21 -

Amendment to the United States Constitution. *See* State of Rhode Island Constitutional Convention, *Report of the Citizens Rights Committee on Individual Rights*, Res. 86-00032, Jan. Sess., at 6 (1986) (unpublished). "The drafters' rationale for adding a parallel yet independent equal-protection clause was presumably to protect the citizens of this state should the federal judiciary adopt a more narrow interpretation of the Fourteenth Amendment." *Providence Teachers' Union Local 958, AFL-CIO, AFT v. City Council of City of Providence*, 888 A.2d 948, 956 (R.I. 2005) (citing *Report of the Citizens Rights Committee*, at 6). Significantly, however, the drafters inserted a sentence declaring that "[n]othing in this section shall be construed to grant or secure any right relating to abortion or the funding thereof." R.I. Const., art. 1, § 2.

"This Court has said that, in construing constitutional amendments, our chief function is to give effect to the intent of the framers." *In re Request for Advisory Opinion from House of Representatives (Coastal Resources Management Council)*, 961 A.2d at 935. When the language in a provision of the constitution is "free from ambiguity, the[] [words] are to be given their plain, ordinary, and usually accepted meaning." *Id.* "The historical context of a constitutional provision also is important in ascertaining its meaning, scope and effect." *Viveiros v. Town of Middletown*, 973 A.2d 607, 611 (R.I. 2009). Importantly, "state constitutional and statutory law is subordinate to the constitutional powers of the

federal government, and 'the Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people[.]'" *McKenna*, 874 A.2d at 237 (quoting *Testa*, 330 U.S. at 391).

A plain reading of article 1, section 2 reveals that the language in the last sentence is clear and unambiguous. First, it is confined to that section of the constitution; it reads, "[n]othing in this *section* shall be construed to grant or secure any right relating to abortion or the funding thereof." R.I. Const., art. 1, § 2 (emphasis added). Second, this sentence employs the term "construed[,]" which connotes a judicial function, defined by Black's Law Dictionary as "[t]o analyze and explain the meaning of (a sentence or passage) <the court construed the language of the statute>." Black's Law Dictionary 393 (11th ed. 2019); *see In re Request for Advisory Opinion from House of Representatives (Coastal Resources Management Council)*, 961 A.2d at 935. Construing provisions in the state's constitution is the function of this Court, and we have not been called upon to do so in the context of this case. But in no way has the General Assembly been prohibited from enacting the legislation at issue in the case at bar. The General Assembly enacts law; it does not interpret or construe the constitution—that is the function of this Court. *See McKenna*, 874 A.2d at 225 (providing that this Court is "the final interpreter of the Rhode Island Constitution and state law").

We pause to note that at the close of the 1986 Constitutional Convention, the public voted to approve and ratify or reject fourteen proposed constitutional amendments by way of referendum. *See* Rhode Island Constitutional Convention 1986, *Voters' Guide to Fourteen Ballot Questions for Constitutional Revision.* Ballot Question No. 8,[14] the proposed amendment to article 1, section 2, was approved.[15] Notably, Ballot Question No. 14,[16] an amendment effectively banning

---

[14] Ballot Question No. 8 stated,

> "Shall free speech, due process and equal protection clauses be added to the Constitution? Shall the state or those doing business with the state be prohibited from discriminating against persons solely on the basis of race, gender or handicap? Shall victims of crime have constitutionally endowed rights, including the right to compensation from perpetrators? Shall individual rights protected by the state constitution stand independent of the U.S. Constitution?" Rhode Island Constitutional Convention 1986, *Voters' Guide to Fourteen Ballot Questions for Constitutional Revision*, Ballot Question No. 8, "Rights of the People."

[15] The votes cast for the "Rights of the People" ballot question across the state resulted in 160,137 to approve this amendment and 115,731 to reject it. *See* Official Count of the Ballots Cast (Board of Elections, 1986).

[16] Ballot Question No. 14 stated,

> "To the extent permitted by the U.S. Constitution, shall all persons, including their unborn offspring, without regard to age, health, function or condition of dependency, be endowed with an inalienable and paramount right to life; and to the extent permitted by the U.S. Constitution, shall abortion be prohibited, except

abortion in Rhode Island, was also on the ballot in 1986.  The question failed.[17]

The submission of these two distinct questions to the voters convinces us that article 1, section 2 prohibits the drawing of any inferences concerning the right to abortion or its funding arising from the due process and equal protection provisions of the state constitution.  We are of the opinion that the enactment of the RPA did not amount to a constitutional amendment requiring a referendum.  We also reiterate that, because plaintiffs do not show an actual and personal stake in the outcome, we make no substantive ruling relative to their claims.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.  The record in this case may be remanded to the Superior Court.

Justice Lynch Prata and Justice Long did not participate.

---

that justified medical procedures to prevent the death of a pregnant woman shall be permitted? Shall the use of government monies to fund abortions be prohibited by the Constitution?" Rhode Island Constitutional Convention 1986, *Voters' Guide to Fourteen Ballot Questions for Constitutional Revision*, Ballot Question No. 14, "Paramount Right to Life/Abortion."

[17] The votes cast for the "Paramount Right to Life/Abortion" ballot question across the state resulted in 102,633 to approve this amendment and 197,520 to reject it. *See* Official Count of the Ballots Cast (Board of Elections, 1986).

**Justice Robinson, concurring in part and dissenting in part.** I am able to concur in the portion of the majority's opinion which holds that the plaintiffs in this case lack standing.[1] However, in accordance with my long-held and emphatic belief that this Court should not opine on issues concerning which we need not opine, it is my opinion that our holding that the instant plaintiffs lack standing should be the end of the matter.[2] *See Grady v. Narragansett Electric Co.*, 962 A.2d 34, 42 n.4 (R.I. 2009) (Robinson, J.) (referencing "our usual policy of not opining with respect to issues about which we need not opine"); *see also Salvatore v. Palangio*, 247 A.3d 1250, 1258 n.7 (R.I. 2021) (Robinson, J.) (citing *Grady*); *IDC Clambakes, Inc. v. Carney as Trustee of Goat Island Realty Trust*, 246 A.3d 927, 935 n.6, 936 n.8 (R.I. 2021) (Robinson, J.) (same); *Mondoux v. Vanghel*, 243 A.3d 1039, 1045 n.3 (R.I. 2021) (Robinson, J.) (same); *La Gondola, Inc. v. City of Providence, by and through Lombardi*, 210 A.3d 1205, 1221 (R.I. 2019) (Robinson, J.) (same); *Rhode Island Industrial-Recreational Building Authority v.*

---

[1] I agree with my respected colleagues that none of the named plaintiffs has standing to pursue this case. However, I do not subscribe to the entirety of the language in the majority's opinion that leads to that dispositive holding.

[2] I acknowledge that there are exceptional occasions when this Court may appropriately opt to overlook the standing requirement and that, due to the exigency of unusual circumstances, I have, on at least one instance in the past, advocated (unsuccessfully) in favor of invoking that exception. *See In re Review of Proposed Town of New Shoreham Project*, 19 A.3d 1226, 1229 (R.I. 2011) (mem.) (Flaherty, J., with whom Robinson, J. joins, dissenting). However, it is my decided opinion that the instant case is not an appropriate one for invoking that exception.

*Capco Endurance, LLC*, 203 A.3d 494, 507 n.5 (R.I. 2019) (Robinson, J.) (same); *North Kingstown School Committee v. Wagner*, 176 A.3d 1097, 1101 (R.I. 2018) (Robinson, J., dissenting) (same); *State v. Peltier*, 116 A.3d 150, 157 (R.I. 2015) (Robinson, J., concurring in part and dissenting in part) (same and contending that the majority "disregarded our strong and oft articulated policy favoring judicial restraint"); *State v. Rodriguez*, 996 A.2d 145, 153 (R.I. 2010) (Robinson, J., concurring) (citing *Grady*). Accordingly, I respectfully but most definitively dissent from any portion of the majority's opinion that addresses any issue other than the standing issue.[3] I see no reason in the instant case for addressing such important and controversial issues when there is no necessity to do so. *See, e.g.*, *Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, 452 A.2d 931, 934 (R.I. 1982) ("As we conclude that [the petitioner] lacks standing to maintain this action, we do not reach any other questions raised by the petition.").

---

[3] I wish to be clear that by this dissent I express no view whatsoever as to the majority's substantive discussion of those other issues. I am vigorously dissenting from the fact that the majority has chosen to address those weighty issues.

## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Michael Benson et al v. Daniel McKee, in his official capacity as Governor for the State of Rhode Island, et al. |
| **Case Number** | No. 2020-66-Appeal. (PC 19-6761) |
| **Date Opinion Filed** | May 4, 2022 |
| **Justices** | Suttell, C.J., Goldberg, and Robinson, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Thomas M. Dickinson, Esq. <br> Diane Messere Magee, Esq. |
| | For Defendants: <br><br> Michael W. Field <br> Assistant Attorney General <br><br> Andrea M. Shea <br> Special Assistant Attorney General |